## A93A1123. ETHERIDGE v. THE STATE.
(435 SE2d 292)

BLACKBURN, Judge.

The appellant, Bobby Joe Etheridge, was convicted of four counts of aggravated child molestation, five counts of child molestation, and four counts of solicitation of sodomy, involving five male victims ranging in age from ten years to seventeen years. His sole contention on appeal is that his trial attorney provided ineffective assistance of counsel.

All five victims testified at trial. The youngest testified that between August and November 1991, Etheridge showed him pornographic movies, put his mouth on the child's penis, and made the boy masturbate him on three separate occasions. After each of these encounters, Etheridge purchased the boy gifts, including a fishing pole, cigarettes, snuff, and a knife.

The above victim's older brother also testified that on three or four occasions between May 1989 and November 1991, Etheridge showed him pornographic movies, masturbated the boy and had him masturbate Etheridge, and put his mouth on the boy's penis. Etheridge also told the boy to put his mouth on Etheridge's penis and requested anal sex with the boy, both of which desires were rejected by the victim. Etheridge had also purchased several items for the victim, including clothes, shoes, and a VCR.

Two other brothers, who were cousins of the above two victims, also recounted how during the summers of 1990 and 1991, Etheridge had shown them pornographic movies, touched their penises, and attempted to insert his penis into their anuses. The older child stated

that Etheridge had put his mouth on the child's penis more times than he could count, and had requested the child to do likewise to him. During the summer of 1991, the child had gone to Etheridge's house almost every day and had sexual encounters with him more than three times per week. Also that summer, Etheridge had bought the older boy beer, cigarettes, and a pair of "skid pants."

The fifth victim recounted that between June 1989 and December 1989, Etheridge showed him pornographic videotapes, got him drunk, touched the boy's penis and attempted to measure it, put his mouth on the victim's penis, had the victim put his penis in Etheridge's anus on several occasions, and masturbated in front of the boy. After the sexual encounters, Etheridge purchased several gifts for the boy, including shoes, a Nintendo game with four game cartridges, clothes, and cigarettes. Etheridge told the victim not to reveal what had happened, or he would tell the boy's father that he was a "faggot." .

On appeal, Etheridge contends that his trial counsel was deficient in four respects: (1) in failing to interview or have testify several witnesses who gave written statements detailing episodes where one of the victims recanted his allegations; (2) in failing to interview any of the victims; (3) in failing to interview or have testify Etheridge's father who was in the home at the time of the alleged incidents; and (4) in failing to object to or rebut the testimony of a rebuttal witness who was not on the witness list provided by the state prior to trial.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance was deficient, and (2) that the defense was prejudiced by the deficient performance, i.e., show a reasonable probability that but for the trial counsel's professional errors, the result of the proceeding would have been different. *Hand v. State*, 205 Ga. App. 467 (422 SE2d 316) (1992). There is a strong presumption that defense counsel's conduct fell within the broad range of reasonable professional conduct. *Bridges v. State*, 205 Ga. App. 664 (423 SE2d 293) (1992).

1. With regard to the potential witnesses who gave statements about some of the victims recanting their allegations, during the hearing on the motion for new trial, Etheridge's trial counsel explained that he had received the statements from these individuals and concluded that the central theme of the statements concerned the bad character of the victims, rather than the innocence of Etheridge. He chose not to call them as witnesses because he preferred not to present a defense focused on attacking the victims instead of promoting the innocence of the defendant.

Two of the potential witnesses indicated that while on a school bus, they overheard one of the boys claim that the allegations concerned only his brother. Etheridge's trial counsel acknowledged that

he did not attach much credit to these statements, out of a common-sense awareness that a boy on a school bus with his peers is not likely to admit to homosexual activity. Another potential witness reported overhearing one of the victims stating that the allegations against Etheridge "was all a joke to get out of paying the rent" that was owed to him. However, trial counsel aggressively pursued this possibility during cross-examination of that victim's mother, and during direct examination of Etheridge.

Regarding trial counsel's failure to call Etheridge's father as a witness, there was no showing how the testimony of Etheridge's father would have been of any benefit or relevance. Even Etheridge testified that his father had already gone to bed at the times the criminal activity was alleged to have occurred. Further, trial counsel stated that he talked with Etheridge's father several times and realized the man was mentally disabled and incapable of testifying in a courtroom without causing more harm than good.

" 'The determination as to which defense witnesses will be called is a matter of trial strategy and tactics.' [Cits.] 'Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result.' " *Cauley v. State*, 203 Ga. App. 299, 301 (416 SE2d 575) (1992). In the instant case, trial counsel articulated several valid reasons for not calling the potential witnesses discussed above, and that strategy did not constitute ineffective assistance.

2. Concerning his failure to interview the victims, Etheridge's trial counsel noted that he thoroughly examined the state's entire file, interviewed the investigating police officer, and reviewed copies of statements from all five victims. He did interview the father of two of the victims, who would not allow him to interview the victims without a court order. Also, as discussed above, at trial all five victims testified and trial counsel's cross-examination of them was thorough. We find no deficiency of performance in this regard.

3. At trial, the mother of two of the victims testified that she had noticed that Etheridge quit attending church following a sermon on homosexuality. Etheridge disputed that testimony, and claimed that he attended church regularly up to the Sunday before his arrest, even driving the witness and her family to the church on occasion. The state then attempted to rebut Etheridge's testimony by calling the church minister, who testified that he did not recognize Etheridge, had not seen him at church after the homosexuality sermon, and had never seen him at church with the mother of the two victims. Trial counsel did not object to the minister's testimony or attempt to rebut it.

Contrary to Etheridge's contention on appeal, there was no valid objection under OCGA § 17-7-110 concerning the state's failure to in-

clude the minister on its list of witnesses. The state's need to call the minister for rebuttal did not arise until Etheridge testified about his regular church attendance, and there is no requirement to give the defendant the names of witnesses who will be used in rebuttal unless the state knows the witness will be called. *Yeomans v. State*, 229 Ga. 488 (2) (192 SE2d 362) (1972). Trial counsel explained that he did not try to rebut the minister's testimony because he considered it insignificant compared to the primary evidence in the case, an acceptable explanation in view of the overwhelming evidence of Etheridge's guilt. In short, Etheridge similarly has demonstrated no deficiency in this regard.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 23, 1993.

*David A. Lamalva, A. Beth Ramshaw*, for appellant.
*Cheryl F. Custer, District Attorney*, for appellee.