## A04A0270. TYLER v. THE STATE.
(596 SE2d 651)

PHIPPS, Judge.

Christopher Tyler was convicted of two counts of aggravated child molestation and sentenced to twenty years imprisonment followed by ten years on probation with special conditions. His motion for new trial was denied, and he appeals. He complains of the trial court's denial of his motion for a directed verdict of acquittal, its denial of his motion for mistrial based on hearsay testimony elicited from the investigating police officer by the prosecuting attorney, and its imposition of the special conditions of probation. Tyler also complains of prosecutorial misconduct in numerous instances. We agree that the prosecutor asked a leading question eliciting damaging hearsay testimony from the investigating police officer in the presence of the jury. Because the trial court failed to take any corrective action, we reverse and remand for further proceedings consistent with this opinion, including a new trial.

The indictment charged Tyler with two counts of aggravated child molestation "on, about and between the 1st day of August, 2000 and the 2nd day of August, 2001, the exact date being unknown," based on allegations that he had performed two acts of sodomy on W. C., one involving Tyler's penis and W. C.'s mouth and the other involving Tyler's mouth and W. C.'s penis.

W. C. appeared at the September 2002 trial and testified as the first state's witness. At the time, he was six years old and in the first grade. His parents had divorced in 1998, and custody of W. C. and his siblings had been awarded to the father with weekend visitation to the mother. W. C. testified that when he visited his mother and his stepfather, Tyler, Tyler had made him touch Tyler's penis and Tyler had "peed in my mouth." W. C.'s testimony authorized the jury to find that the incidents charged in the indictment occurred in the summer of 2001 at his mother and stepfather's residence.

W. C. was suspended from his daycare school on July 25, 2001, for crawling on the bathroom floor and attempting or threatening to bite other boys' penises. W. C.'s father and stepmother took W. C. home and asked him why he had engaged in such behavior. They testified that W. C. immediately responded, "That's what [Tyler] made me do." W. C. also said that Tyler had put his penis in W. C.'s mouth and "peed." When W. C. repeated the allegation to them, they took him to a pediatrician. The pediatrician interviewed W. C. and then notified the Department of Family and Children Services, which in turn notified police.

On or about August 1, Detective Mestre of the Cobb County Police Department interviewed W. C. The interview was videotaped,

and the videotape was played to the jury. Upon being questioned by Mestre, W. C. initially responded that the only person who had ever touched him in a bad way was a friend named Cody. After being repeatedly asked whether he had talked to his father about something that had happened at his mother's house, W. C. responded that he had told his father that Tyler had touched him on his penis with his (Tyler's) mouth. But W. C. said that it had happened at "mama's work." When asked whether anything else had happened with Tyler, or whether W. C. had told his father about anything else happening, W. C. gave a series of negative responses but then said that his older cousin had put Tyler's penis in W. C.'s mouth and that Tyler had "peed." W. C. said that this had happened at "mama's work" and at "mama's home."

Tyler, W. C.'s mother, and W. C.'s older cousin testified at trial as defense witnesses. Tyler and W. C.'s mother denied that Tyler had ever been left alone with W. C. Tyler denied having ever molested W. C. W. C.'s cousin testified that he had been charged with aggravated child molestation as a result of W. C.'s accusations; and that he had pled guilty to the lesser offense of cruelty to children as part of a plea bargain involving an unrelated robbery; but that he had never touched or molested W. C.; and that he had refused to testify against Tyler, because he had never seen Tyler engage in any inappropriate act with W. C., nor had Tyler ever tried to force him to engage in any inappropriate act with W. C.

1. The trial court did not err in denying Tyler's motion for directed verdict of acquittal.

In arguing otherwise, Tyler claims that no competent evidence was introduced showing that he had committed an act of aggravated child molestation by placing his mouth on W. C.'s penis. We cannot agree. In his pretrial interview with Detective Mestre, as shown on the videotape played to the jury, W. C. stated that Tyler had placed his mouth on W. C.'s penis. Because this constitutes competent evidence to support each fact necessary to make out the state's case, Tyler's conviction of this offense must be upheld.[1]

Tyler also argues that the state did not prove that the crimes were committed within the time frame alleged in the indictment, i.e., between August 1, 2000, and August 2, 2001. As a general rule, however,

"where the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it

---

[1] *Thompson v. State*, 245 Ga. App. 396, 398 (3) (537 SE2d 807) (2000).

may be proved as of any time within the statute of limitations." Here, the date was not stated as a material element of the offense charged, and the State was not required to prove the crime occurred on a date certain.[2]

The statute of limitation for the offenses charged in this case was seven years.[3] The state's proof certainly showed that the offenses were committed within this period.

Contrary to other arguments advanced by Tyler, the state did establish venue by submitting evidence that the crimes occurred in Cobb County, and he was properly convicted of two counts of aggravated child molestation based on evidence that he had engaged in two separate acts constituting this offense.[4]

2. Tyler claims that he was entitled to a mistrial when the prosecuting attorney elicited hearsay testimony from Mestre that Tyler had been sexually molested as a child.

The prosecuting attorney asked Mestre whether Tyler's wife had said anything to him about her and Tyler's childhoods. Mestre responded, "She mentioned that they had both been molested." Defense counsel thereupon objected based on "relevance" and "character." The court sustained the objection and counsel moved for a mistrial. But the trial court denied the motion for mistrial, ruling that the testimony was irrelevant but not harmful.

With that conclusion, we must disagree. The jury might have inferred that any molestation of Tyler as a child would have increased his propensity to become a child molester. In fact, the trial court, having found the testimony irrelevant, then said that "[t]here is no rule that because someone was molested they will not molest, *in fact, the very opposite is very often true.*" Therefore, even though the testimony technically may not have constituted bad character evidence,[5] it placed Tyler's character in issue in a way that was clearly harmful and irrelevant. The trial court, however, inexplicably found that the testimony was not harmful and did not give any curative instruction. The state argues that the testimony was admissible to show that Tyler's wife had lied to Mestre. But the evidence was introduced in a manner intended to show that Tyler's wife had truthfully revealed that he had been a victim of child molestation. This case is thus governed by the rule that

---

[2] (Footnotes omitted.) *Wallace v. State*, 253 Ga. App. 220, 221 (1) (a) (558 SE2d 773) (2002).

[3] OCGA § 17-3-1 (b) (Ga. L. 1996, p. 1115, § 4).

[4] See *Casey v. State*, 237 Ga. App. 461, 463 (4) (515 SE2d 429) (1999).

[5] See *Wright v. State*, 259 Ga. App. 74, 78 (4) (576 SE2d 64) (2003) (being a crime victim not evidence of bad character).

[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.[6]

Here the prosecuting attorney asked a question, which was intended to elicit prejudicial hearsay testimony from a state's witness concerning matters not in evidence, and which did elicit such testimony. "The trial court in the present case failed to perform the duty imposed by the statute. Although such a failure can constitute reversible error, the error is subject to application of harmless error analysis."[7] Because the evidence is far from overwhelming, we are unable to find harmless error.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion, including retrial of the defendant.

3. The remaining issues are moot.

*Judgment reversed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED FEBRUARY 24, 2004 —
RECONSIDERATION DENIED MARCH 12, 2004 — 

*Nicholas Pagano*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Lori A. Zamberletti, Assistant District Attorneys*, for appellee.

---

[6] OCGA § 17-8-75; *Fincher v. State*, 276 Ga. 480, 482 (4) (578 SE2d 102) (2003).
[7] (Citations omitted.) *Fincher*, supra.