632 S.E.2d 716 (2006)
279 Ga. App. 809
TYLER
v.
The STATE.
No. A06A0423.
Court of Appeals of Georgia.
June 15, 2006.
Certiorari Denied October 2, 2006.
*717 John D. Thalhimer, Marietta, for Appellant.
Patrick H. Head, District Attorney, Charles P. Boring, Amelia G. Pray, Assistant District Attorneys, for Appellee.
BERNES, Judge.
A Cobb County jury found Christopher M. Tyler guilty of committing two counts of aggravated child molestation against his five-year-old stepson W.C. On appeal from the denial of his amended motion for new trial, Tyler contends that the trial court erred by not charging the jury on three alleged lesser included offenses and by imposing probation conditions that he claims are vague and overly broad. Tyler also contends that he was denied effective assistance of counsel. We conclude that one of the probation conditions imposed upon Tyler is vague and overly broad, and, therefore, must be vacated. We affirm in all other respects.
*718 Viewed in the light most favorable to the verdict, the evidence reflects that the parents of W.C. divorced in 1998. Both subsequently remarried. The father had been awarded custody of W.C. and his siblings, but W.C. and his older sister would visit their mother and stepfather, defendant Tyler, on the weekends and for an extended period during the summer. W.C.'s mother, his stepfather Tyler, his aunt, and his older cousin lived together in an apartment in Cobb County.
On July 25, 2001, five-year-old W.C. was suspended from summer camp for crawling on the bathroom floor and attempting to bite other boys' penises. After picking up W.C. from the summer camp, his father and stepmother asked him about the incident in the bathroom. W.C. stated, "Well, that's what [Tyler] made me do." W.C. explained that Tyler "put his peter in [W.C.'s] mouth," "peed," and made him swallow it. W.C. also told his father and stepmother that Tyler had forced his older cousin who lived in the same apartment to participate. Finally, W.C. said that Tyler warned him that if he told anyone about what had occurred, W.C. would go to jail.
W.C.'s father contacted the Department of Family and Children Services, which put him into contact with Detective Jorge Mestre of the Cobb County Crimes Against Children Unit. Detective Mestre subsequently conducted a videotaped interview with W.C. During the interview, W.C. told the detective that Tyler had put his mouth on W.C.'s penis and "was trying to bite it off." W.C. further stated that Tyler had placed his penis into W.C.'s mouth and "peed." In addition, W.C. divulged to the detective that his older cousin was a participant in what had occurred.
Tyler was indicted, tried, and convicted on two counts of aggravated child molestation. On appeal, this Court reversed Tyler's convictions and remanded for a new trial based upon the introduction of improper testimony that Tyler had been sexually molested as a child. See Tyler v. State, 266 Ga.App. 221, 223-224(2), 596 S.E.2d 651 (2004). During the trial on remand, W.C. testified that when he was five-years old, Tyler "put his private in my mouth and peed in it, and made me swallow it." Among other witnesses, W.C.'s father and stepmother testified about what W.C. told them following the incident in the summer camp bathroom, and Detective Mestre testified about his interview with W.C. The state introduced the videotape of the interview into evidence and played it to the jury. Tyler took the stand in his own defense and claimed that he had never been alone with W.C. and had not molested him. The jury convicted Tyler on both counts of aggravated child molestation.
1. Although Tyler does not raise the sufficiency of the evidence as a ground for appeal, we conclude, after reviewing the evidence in the light most favorable to the jury's verdict, that any rational factfinder could have found Tyler guilty on the two counts of aggravated child molestation beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Indeed, W.C.'s testimony, standing alone, would have been sufficient to authorize a guilty verdict. McKinney v. State, 269 Ga.App. 12, 16(2), 602 S.E.2d 904 (2004).
2. Tyler claims that the trial court erred by failing to charge the jury on the offenses of child molestation, sexual battery, and cruelty to children in the first degree, which he argues were lesser included offenses as a matter of fact. We disagree. "Where, as here, the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." (Citations and punctuation omitted.) Jackson v. State, 213 Ga.App. 170, 171-172(2)(b), 444 S.E.2d 126 (1994). See also Wright v. State, 259 Ga. App. 74, 77(2), 576 S.E.2d 64 (2003) ("[W]hen the evidence shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense.") (footnote omitted); Oliver v. State, 232 Ga.App. 816, 819(2), 503 S.E.2d 28 (1998) (defendant convicted of armed robbery not entitled to charge on alleged lesser included offense of theft by taking when there was "no evidentiary alternative" to the charged offense; "either he did [it] or he did not").
"A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or *719 with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4(a). "Child molestation advances to aggravated child molestation with the addition of either physical injury to the child or sodomy. Sodomy, in turn, is defined as `any sexual act involving the sex organs of one person and the mouth or anus of another.' [OCGA § 16-6-2(a).]" (Footnotes omitted.) Wright, 259 Ga.App. at 77(2), 576 S.E.2d 64.
Tyler was indicted on two counts of aggravated child molestation, the first count for "performing an act of sodomy ... involving the penis of the accused and the mouth of the child," and the second count for "performing an act of sodomy ... involving the mouth of the accused and the penis of the child." Through the testimony of W.C., his father, his stepmother, and Detective Mestre, combined with the videotaped interview played to the jury, the state presented evidence of the completed offense of aggravated child molestation on two counts. In contrast, Tyler testified that he had never been alone with W.C. and did not commit the charged offenses. "Therefore, the evidence presented to the jury offered the choice between the completed crime or no crime. Accordingly, the trial court was not required to charge on the lesser offense[s]." (Footnote omitted.) Howell v. State, 278 Ga.App. 634, 641(4), 629 S.E.2d 398 (2006) (physical precedent only). See Wright, 259 Ga.App. at 76-77(2), 576 S.E.2d 64; Ney v. State, 227 Ga.App. 496, 502-503(4)(g), 489 S.E.2d 509 (1997); Landrum v. State, 210 Ga.App. 275, 277-278(6), 436 S.E.2d 40 (1993).
Tyler argues that the trial court should have charged the jury on child molestation because prior to trial, the state offered Tyler a deal to plead guilty to that lesser charge (which he rejected). Tyler further argues that the trial court should have charged the jury on cruelty to children in the first degree because W.C.'s older cousin also had been indicted on two counts of aggravated child molestation for the same incidents but was allowed to plead guilty to the lesser charge. But, the fact that the defendant was made a plea offer or a co-defendant pled guilty to a lesser offense "can very well be the result of negotiation" and does not on its face constitute "`evidence' as to the underlying facts so as to support a jury charge on the lesser offense." Harrison v. State, 252 Ga.App. 833, 557 S.E.2d 447 (2001). Rather, a trial court's decision to charge the jury on an alleged lesser included offense turns on what the underlying factual evidence establishes at trial. Id. As such, Tyler's argument is misplaced.
3. Tyler maintains that his trial counsel provided ineffective assistance at trial. Specifically, Tyler asserts that his trial counsel was ineffective because he did not (a) request that the trial court charge the jury on child molestation, sexual battery, and cruelty to children in the first degree; (b) file an ex-parte request for funds for an expert to review and testify about the videotaped interview; or (c) subpoena W.C.'s mother and older cousin to testify at trial.
"A defendant claiming ineffective assistance of counsel must show ... that his attorney's representation in specified instances fell below an objective standard of reasonableness and ... there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (Citation omitted.) Parrish v. State, 237 Ga.App. 274, 283(10), 514 S.E.2d 458 (1999). See also Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A strong presumption exists that trial counsel performed within the wide range of reasonable professional assistance. The trial court's determination that [Tyler] was afforded effective assistance of counsel will not be reversed on appeal unless it was clearly erroneous." (Citations omitted.) Porter v. State, 243 Ga.App. 498, 502(4), 532 S.E.2d 407 (2000). Georgia does not recognize the cumulative error doctrine, and so we will analyze each of Tyler's ineffective assistance claims separately. Fitz v. State, 275 Ga.App. 817, 824-825(4), 622 S.E.2d 46 (2005).
(a) Tyler argues that his trial counsel was ineffective because he did not request that the trial court charge the jury on the alleged lesser included offenses of child molestation, sexual battery, and cruelty to children in the *720 first degree. Having concluded in Division 2 that charges on these offenses were not warranted under the evidence presented at trial, we likewise conclude that Tyler cannot establish that his trial counsel's performance was deficient by failing to request the charges. Trial counsel is not deficient for failing to raise a meritless argument. See Williams v. State, 262 Ga.App. 698, 700(2), 588 S.E.2d 755 (2003).
(b) Tyler next claims that his trial counsel was ineffective because he failed to file an ex-parte request for funds for an expert witness to review and testify about alleged flaws in the videotaped interview conducted by Detective Mestre. We disagree because Tyler cannot prove that he was prejudiced by the alleged failure. See Walker v. State, 268 Ga.App. 669, 673(4)(a), 602 S.E.2d 351 (2004) ("[A] court need not determine whether trial counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency.") (footnote omitted).
At the motion for new trial hearing, Tyler proffered the testimony of a clinical psychologist who had reviewed the videotaped interview of W.C. The psychologist testified to certain problems he perceived with Detective Mestre's interviewing techniques, including the sequence of the questioning, the use of repetitive and leading questions, and the failure to ask follow-up questions to clarify ambiguities in W.C.'s answers. The psychologist further testified that the interview did "not rise to a full forensic interview standard" and that Detective Mestre appeared to have conducted the interview with a preconceived bias toward a finding of molestation.
Based on the clinical psychologist's proffered testimony, Tyler contended that his trial counsel was deficient and prejudiced his defense by failing to request funds to hire such an expert to testify about the videotaped interview. The trial court disagreed, finding that Tyler could not meet the prejudice prong of the ineffective assistance standard. Specifically, the trial court found that
[t]he witness proffered would have made no difference in the outcome of the case.... [T]rial counsel ... thoroughly attacked the video and interviewer on the same issues as the expert, most of which would have been readily discernible to and understood by the jurors.
We conclude that the trial court's determination was not clearly erroneous. At the motion hearing, Tyler's trial counsel testified that he had tried ten or more child molestation cases, most of which involved videotaped interviews with the alleged victim. As a result of reviewing the videotapes in those cases, trial counsel testified that he had become familiar with the common types of problems that can arise when a child is interviewed about alleged molestation.
The record reflects that Tyler's trial counsel drew upon this experience and understanding of the problems that arise from interviews with children in his cross-examination of Detective Mestre and closing argument. Trial counsel cross-examined the detective in a manner aimed at showing that he went into his interview with W.C. already convinced that Tyler had molested W.C. based on his prior interview of W.C.'s father. Trial counsel also cross-examined the detective about his use of leading questions, suggesting that this was an inappropriate interviewing technique that could have contaminated the result. Moreover, trial counsel asked the detective about his failure to follow-up on certain lines of questioning based on W.C.'s answers, once again highlighting to the jury that the detective might have been biased in conducting the interview. Finally, during closing argument, trial counsel emphasized to the jury that Detective Mestre had repeatedly asked leading questions, and he argued that the detective had "badgered" W.C. into accusing Tyler of molestation.
In light of the attack upon Detective Mestre's interviewing techniques made by trial counsel in his cross-examination and closing argument, Tyler "has not demonstrated that there would have been a different outcome had counsel requested funds and called" an expert witness similarly to attack those techniques. Cupe v. State, 253 Ga.App. 851, 856(3)(e), 560 S.E.2d 700 (2002) (finding no prejudice when defense counsel failed to request funds and hire clinical psychologist *721 with expertise in child-interviewing techniques). See also Canada v. State, 275 Ga. 131, 133(2), 562 S.E.2d 508 (2002) (failure to call defense medical expert did not constitute ineffective assistance when trial counsel thoroughly cross-examined state's witnesses); Moreland v. State, 263 Ga.App. 585, 588(4), 588 S.E.2d 785 (2003) (failure to call witness did not constitute ineffective assistance when same basic testimony was obtained through cross-examination of state's witnesses). This is particularly true where, as here, the state did not call an expert psychologist at trial that the defense needed to refute. Cf. Coalson v. State, 251 Ga.App. 761, 767(3), 555 S.E.2d 128 (2001) (trial court did not abuse its discretion in failing to provide funds for expert witness in child molestation case in part because "the State did not utilize an expert in the trial of this case, so there was no expert opinion to be refuted"). Therefore, the trial court did not err in finding that Tyler failed to establish the prejudice prong of the ineffective assistance standard.
(c) Finally, Tyler asserts that his trial counsel was ineffective because he did not subpoena W.C.'s mother and older cousin to testify on his behalf. Both testified for the defense at Tyler's first trial. See Tyler, 266 Ga.App. at 222, 596 S.E.2d 651. In contrast, Tyler's trial counsel did not subpoena or call either one of them as part of the defense's case in the second trial. We will discuss each potential witness in turn.
(i) There is nothing in the new trial hearing transcript or in the second trial transcript that reveals why trial counsel chose not to call W.C.'s mother as a defense witness. "[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic." (Punctuation and footnote omitted.) Williams, 262 Ga.App. at 700(2), 588 S.E.2d 755. See also Clark v. State, 239 Ga.App. 245, 248(5), 520 S.E.2d 245 (1999). Moreover, Georgia courts have long emphasized that "[t]he decision as to which defense witnesses will be called is a matter of trial strategy and tactics" that normally will not serve as the basis for an ineffective assistance claim. (Citation omitted.) Porter, 243 Ga.App. at 502(4), 532 S.E.2d 407. See also Beecher v. State, 240 Ga.App. 457, 460(4), 523 S.E.2d 54 (1999). And, it is a recognized trial tactic to forego calling a witness whose testimony, on balance, might "caus[e] more harm than good." Etheridge v. State, 210 Ga.App. 96, 98(1), 435 S.E.2d 292 (1993). See also Hazelrigs v. State, 255 Ga.App. 784, 786-787(2), 567 S.E.2d 79 (2002) (trial counsel not ineffective in declining to call witness whose testimony might be favorable to defense, when witness' testimony nevertheless "would still expose material potentially harmful to the defense"); Rowland v. State, 228 Ga.App. 66, 70(3)(e), 491 S.E.2d 119 (1997) (trial counsel's decision not to call witnesses did not constitute ineffective assistance, "[i]n view of their limited value" to the defense).
Here, the transcript from the first trial reveals that W.C.'s mother would have testified that Tyler was never left alone with W.C. Yet, the mother admitted that there were times when she was outside of Tyler and W.C.'s presence, such as when she would take a shower. Thus, the mother's personal knowledge concerning whether Tyler and W.C. were ever alone together in a room of the apartment was limited, rendering her testimony of limited evidentiary value to the defense. In contrast, if the mother had testified in the second trial, the state would have cross-examined her about a damaging episode in which she allegedly spoke with W.C. at dinner approximately a week before the first trial and attempted to convince him to say that Tyler had never molested him. The state also would have cross-examined W.C.'s mother about the fact that during the sentencing hearing at the first trial, she testified that she would willingly give up custody of W.C. and his siblings if she could move out of state and "start [her] life over again" with Tyler.
Under these circumstances, it is clear that W.C.'s mother would not have made a strong witness for the defense. At the same time, by not calling W.C.'s mother as a witness, trial counsel avoided introduction of the alleged attempted cover-up over dinner and also was able to argue during closing argument that the jury should wonder why the state chose not to call the mother as a witness. Accordingly, trial counsel's strategic decision not to call W.C.'s mother did not *722 constitute ineffective assistance of counsel. See Hazelrigs, 255 Ga.App. at 787(2), 567 S.E.2d 79; Rowland, 228 Ga.App. at 70(3)(e), 491 S.E.2d 119; Etheridge, 210 Ga.App. at 98(1), 435 S.E.2d 292. "The fact that [Tyler] and present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that [Tyler] received representation amounting to ineffective assistance of counsel." (Citation and punctuation omitted.) Porter, 243 Ga.App. at 502-503(4), 532 S.E.2d 407.
(ii) The record reflects that trial counsel did not subpoena W.C.'s older cousin to testify as a defense witness because counsel claimed that he could not locate the cousin prior to trial. However, even if trial counsel was deficient in failing to locate and subpoena W.C.'s older cousin to testify as a defense witness, we conclude that no prejudice occurred. The transcript from the first trial reveals that W.C.'s older cousin would have testified in the second trial that he never participated in the alleged molestation and never saw Tyler molest W.C. Significantly, however, the older cousin pled guilty and was sentenced for cruelty to children in the first degree for his involvement in what occurred to W.C. We find it highly improbable that the older cousin's testimony that he never saw the molestation occur "would have altered the verdict considering [his] admission to the contrary by virtue of his guilty plea." (Footnote omitted.) Gordillo v. State, 255 Ga.App. 73, 77(3)(b)(i), 564 S.E.2d 486 (2002). See also Silvers v. State, 278 Ga. 45, 48(3), 597 S.E.2d 373 (2004) (once convicted, a defendant who "seeks to exculpate his co-defendant lacks credibility, since he has nothing to lose by testifying untruthfully regarding the alleged innocence" of his co-defendant) (citation and punctuation omitted). Hence, there is no reasonable probability that the outcome of the trial would have been different had W.C.'s older cousin testified, and so Tyler's ineffective assistance claim cannot succeed.
4. Tyler contends that the trial court erred by imposing probation conditions that he claims are unconstitutionally vague and overly broad. Tyler objected to the following four probation conditions:
1. Defendant will submit a schedule of weekly activities to the probation officer and will be subject to curfews at the officer's discretion.
4. Defendant will remain appropriately clothed when in public and when the potential for public view exists.
9. Defendant shall not initiate contact with nor continue uninitiated contact with a child under the age of 18.
10. Defendant shall not be in the presence of a child under the age of 18 without the immediate presence of the supervisor who has been approved by the treatment provider and probation officer.
"[A] trial court certainly has broad discretion to determine the terms and conditions of probation." (Citation omitted.) Payne v. State, 273 Ga.App. 483, 488(8), 615 S.E.2d 564 (2005). As such, the trial court has broad discretionary authority to impose any "conditions which [are] reasonably related to the nature and circumstances of the offense and to the rehabilitative goals of the probationary sentence." (Citations omitted.) Ellis v. State, 221 Ga.App. 103(1), 470 S.E.2d 495 (1996).
We conclude that the trial court did not abuse its discretion in imposing conditions one, four, and nine. Trial courts have explicit statutory authority to direct a probationer to report to a probation officer, see OCGA § 42-8-35(a)(3), and we have held that trial courts have discretion to impose a curfew as a condition of probation. See Johnson v. State, 162 Ga.App. 226(1), 291 S.E.2d 94 (1982). Thus, condition one "is sufficiently specific and narrow to be reasonably related to the sentencing objective." Harrell v. State, 253 Ga.App. 440, 441(1), 559 S.E.2d 155 (2002). As to condition four, we construe it as imposing substantially the same requirements as those imposed by Georgia's public indecency law, OCGA § 16-6-8(a)(2) and (3).[1]
*723 For this reason, condition four also is sufficiently specific and definite. See, e.g., Rowland v. State, 124 Ga.App. 494, 495(2), 184 S.E.2d 494 (1971) (upholding probation condition prohibiting probationer from "indulging in any unlawful, disrespectful or disorderly conduct" because the condition forbade conduct "substantially the same as that conduct which is prohibited by law"). Finally, we have upheld probation conditions forbidding "contact" with minors, and so we find no error in the imposition of condition nine. See, e.g., Potts v. State, 207 Ga.App. 863, 866(3), 429 S.E.2d 526 (1993); Hardman v. Hardman, 185 Ga.App. 519, 521(5), 364 S.E.2d 645 (1988), overruled in part on other grounds, Pender v. Witcher, 196 Ga.App. 856, 397 S.E.2d 193 (1990).
We reach a different result regarding condition ten. Probation "conditions must not be so broadly worded as to encompass groups and places not rationally related to the purpose of the sentencing objective." (Citation omitted.) Harrell, 253 Ga.App. at 441(1), 559 S.E.2d 155. Here, the condition precluding Tyler from being in the mere "presence" of a minor without supervision "could be literally applied to prohibit [Tyler] from shopping at virtually any store" without an approved supervisor accompanying him. Ellis, 221 Ga.App. at 104(1), 470 S.E.2d 495. It follows that "[t]he condition[], as written, [is] susceptible of being read and applied in ways which are not reasonably related to the sentencing objectives." Id. Thus, we must conclude that the trial court abused its discretion in imposing condition ten. See Harrell, 253 Ga.App. at 440, 441(1), 559 S.E.2d 155 (vacating probation condition stating: "Probationer shall not linger, loiter, or spend time at locations where children under 18 are present or are likely to be present."); Ellis, 221 Ga.App. at 103-104(1), 470 S.E.2d 495 (vacating probation condition stating: "Probationer shall not linger, loiter or spend time at locations where children under 18 are present or are likely to be present. Such locations include but are not limited to schools, parks, playgrounds, sporting events, school bus stops, public swimming pools, and arcades.") (punctuation omitted).[2]
For the foregoing reasons, we vacate probation condition ten but affirm in all other respects the trial court's denial of Tyler's amended motion for new trial. The case is remanded to the trial court for resentencing on the vacated probation condition.
Judgment affirmed in part, vacated in part and case remanded in part.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] OCGA § 16-6-8 provides in part:

(a) A person commits the offense of public indecency when he or she performs any of the following acts in a public place:
. . .
(2) A lewd exposure of the sexual organs;
(3) A lewd appearance in a state of partial or complete nudity. . . .
[2] This Court has distinguished between a probation condition forbidding a probationer from being in the mere "presence" of a minor and one forbidding him or her from being "alone" with a minor. See Harrell, 253 Ga.App. at 440, 440-441(1), 559 S.E.2d 155 (upholding probation condition stating: "Probationer shall not be alone with any child under 18 years of age unless an adult is present who has knowledge of the probationer's history or criminal sexual behavior and/or abusive behavior and has been approved as a chaperon by the probation officer and treatment provider.").