A07A1366. HERRING v. THE STATE.
(653 SE2d 494)

ADAMS, Judge.

After a jury trial, Joseph Herring was convicted of child molestation, aggravated child molestation, and aggravated sexual battery. On appeal, he argues that the trial court erred when it allowed the State to elicit evidence concerning his sexual disposition. Herring also asserts that his trial counsel was ineffective. We find that the trial court indeed erred when it allowed counsel to cross-examine Herring concerning his sexual history and habits, including his use of pornography for the purpose of masturbation, in the absence of any

evidence linking these subjects to the charged crime of child molestation. We also conclude that Herring was harmed by the error. We therefore reverse the trial court's denial of Herring's motion for new trial.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that for some time before January 2004, Herring had been living with his mother, his sister, and his sister's three children. On January 2, 2004, while Herring's mother was at work, Herring babysat his niece and nephews while his sister went to pick up her paycheck. When the sister returned home, her seven-year-old son told her that Herring had done "something bad" to his five-year-old sister. When the sister spoke to her daughter, the daughter said that Herring had put her hand on his penis and made her move it back and forth. The sister soon left the house with her children in her cousin's truck and spent the night at a friend's house.

The next morning, the sister overheard her two children discussing what Herring had done to the victim. Believing that the victim might be less embarrassed talking to her cousin, the sister asked her to talk to the victim. The victim then told the cousin that Herring had made her put her mouth on his penis.

In a videotaped interview played back at trial, the victim said that Herring had made her suck his penis, that he had put his mouth on her vagina, and that he had stuck his finger in her vagina and anus. The brother testified that he saw Herring lying on the bed in his mother's room while the victim was also in the room, that Herring chased him into his own room and told him to "stay in bed until that night," and that he "saw" "something bad" happen to his sister.

1. The evidence outlined above was sufficient to sustain Herring's conviction. See OCGA §§ 16-6-4 (child molestation and aggravated child molestation), 16-6-22.2 (aggravated sexual battery); see also *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002) (testimony of victim alone was sufficient to sustain defendant's conviction for child molestation).

2. Herring's principal argument on appeal is that the trial court erred when it allowed the State to elicit testimony concerning his sexual history and habits, including his use of pornography for the purpose of masturbation. We agree.

After his arrest, Herring apparently told the investigating detective that he was a virgin and that he masturbated to relieve sexual tension. Before trial, Herring brought a motion in limine to exclude evidence of his "sexual history and habits." At the hearing on the motion, the State advanced its theory that the sexually frustrated Herring took advantage of his mother's and sister's absences to molest the victim. The trial court denied Herring's motion, but urged counsel "to go ahead and renew your motion at the appropriate time."

Just before the State's opening argument, the prosecutor told the trial court that he intended to outline the sexual frustration theory. The trial court gave him permission to do so and noted Herring's objection thereto. After introductory remarks including that although "what the lawyers say is not evidence," their "opening statement[s are] intended to be a preview or an outline of what they expect the evidence to be," the State argued as follows:

> The evidence is going to show that this 30-year-old man, although he's a grown man, had never experienced a serious relationship with [a] female in his lifetime. The 30-year-old man didn't date. . . . He's lived at home with his mother his entire life. He worked occasionally[,] . . . but when he didn't work, he . . . would spend long hours in his own bedroom on the computer . . . [and] his door would be shut. Hours and hours spent on the computer. *[Herring] admitted to the police that he never had a serious relationship with someone his own age, admitted being a virgin, admitted that when he had sexual tensions, he would relieve these tensions through masturbation.* That's the defendant who's on trial in this case, and *it's against that backdrop that these allegations come forward.*

(Emphasis supplied.) Later on the first day of trial, however, the trial court expressed doubt that evidence of Herring's sexual history and habits should be admitted, asking counsel for law on the subject.

At the opening of proceedings the following morning, the trial court held that evidence concerning Herring's virginity and masturbation was inadmissible. The State then moved for a mistrial on the grounds that it had argued these matters in reliance on the court's ruling and that both the State and Herring had been prejudiced thereby. Herring did not join the State's motion, however, arguing that these topics had always been irrelevant. The trial court then confirmed its ruling, indicated that it planned to give a curative instruction, and denied the State's motion. The trial court gave no

specific instruction in the wake of these rulings, although it repeated as part of its final charge that "nothing [that] the lawyers say is evidence."

Just before the testimony of the victim's brother, the trial court and counsel confirmed that although questions concerning Herring's virginity and masturbation were barred, questions concerning his computer usage and his failure to date were permissible. Herring reserved his right to object to the latter. The State then elicited testimony from Herring's brother and his cousin concerning Herring's extended use of his computer with the door shut and his failure to date.

When Herring took the stand in his own defense, the State again asked for permission to ask him about "how he satisfies his sexual desires," including masturbation. The trial court repeated that it would not allow such questions "unless the defendant opens the door to the issue." On direct examination, Herring did not broach any of these subjects. On cross-examination, however, the State pursued the following line of questioning:

Q. You lived at home with your mother your entire life. You never dated and you never had a serious relationship with [a] girl in your entire life. Isn't that true?
A. That's correct.

. . .

Q. [W]hen you're on [your] computer in your bedroom, you're usually on it with the door shut. Isn't that true?
A. True.
Q. Now, when you're on that computer on the Internet in your room with your door shut, you're looking at porn, aren't you?
A. No.
Q. Have you ever looked at pornography on the Internet?
A. Yes.

. . .

Q. Why are you looking at pornography on your computer at home with your door shut?
A. For self-gratification.
Q. What does that mean?
A. Masturbate.
Q. So you admit that when you're at home in your bedroom with the door shut and on the Internet looking at pornography, it gets you sexually aroused.
A. Yes.

Neither counsel nor the trial court interrupted these proceedings. The State then moved immediately into the details of the alleged molestation.

(a) As a preliminary matter, we note that because Herring had obtained a ruling on a motion in limine, he was not under an obligation to object when the State cross-examined him concerning his sexual history and habits. As the Supreme Court of Georgia has noted, the purpose of a motion in limine is

> to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. *It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach.*

(Citations and punctuation omitted; emphasis supplied.) *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285 (1), n. 1 (260 SE2d 20) (1979). "Having obtained a ruling in limine," "it was not necessary for [Herring] to raise an objection at trial when the evidence was introduced in order to preserve this issue for appellate review." *Lewis v. State*, 279 Ga. 69, 73 (5), n. 17 (608 SE2d 602) (2005).

> To hold otherwise, and require the successful movant to object when evidence encompassed by the motion in limine is nevertheless offered at trial, would defeat the purpose of the motion in limine, as the movant would be forced, in the presence of the jury, to call special attention to prejudicial evidence which the trial court had previously ordered to be excluded from the jury's consideration.

*Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982).

(b) In order to introduce evidence of a defendant's lustful disposition, the State must link those practices to the specific crime charged:

> In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a

defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

*Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999). Here, the State produced no evidence that Herring viewed *child* pornography, or that he viewed any pornography at all in the presence of the victim or other children. The trial court was therefore correct when it excluded questions and evidence referring to pornography or masturbation in the absence of any specific link between either of these subjects and the charged crime. See id.; *Frazier v. State*, 241 Ga. App. 125, 126-127 (1) (524 SE2d 768) (1999) (granting new trial when trial court admitted evidence showing defendant's lustful disposition, including his interest in adult group masturbation, without any connection to the charged crime of child molestation); *Ferrell*, 256 Ga. App. at 694-695 (2) (trial court properly excluded evidence of calls to adult sex line neither made in the victims' presence nor having children as their subject; evidence of masturbation properly admitted "because it took place in the presence of children"); see also *People v. Griffin*, 242 A.D.2d 70 (N.Y. App. Div. 1998) (reversing denial of defendant's motion for mistrial where prosecution disregarded motion in limine barring references to his masturbating in front of a patient).

The State flouted this ruling, however, when it asked Herring whether, how often, and why he looked at pornography on the Internet, and the trial court erred when it allowed the State to do so. See *Lewis*, 279 Ga. at 73-74 (5) (trial court erred when it permitted irrelevant testimony previously excluded by its ruling in limine).

It is equally clear that Herring was prejudiced by the State's violation of the trial court's ruling. The State relied on the victim's statement, and the examining physician testified that there was no physical evidence of injury in this case, as in nearly all those involving digital penetration. Her brother corroborated the victim's testimony concerning her outcry, but his testimony concerning the crime itself consisted only of statements that (i) he saw Herring lying on the bed in his mother's room while the victim was also somewhere in the room; (ii) Herring chased him into his own room and told him to "stay in bed until that night"; and (iii) he "saw" "something bad" happen to his sister. Herring also waived his constitutional right not to testify on his own behalf, choosing to take the stand and to deny that he had committed the charged acts.

Under these circumstances, in which "the jury was required to decide between the credibility of the State's inculpatory evidence and the credibility of [Herring's] exculpatory testimony," we must conclude that the State's improper line of questioning prejudiced Herring. See *Frazier*, 241 Ga. App. at 127 (1) (lack of physical evidence,

two alibi witnesses, and defendant's exculpatory testimony precluded finding of overwhelming evidence); *White v. State,* 213 Ga. App. 429, 431 (1) (445 SE2d 309) (1994) (defendant's denial on the stand and lack of conclusive physical evidence precluded a finding of overwhelming evidence as a matter of law). A new trial is therefore required. *Frazier,* 241 Ga. App. at 127 (1); *White,* 213 Ga. App. at 431 (1); see also *Tyler v. State,* 266 Ga. App. 221, 223-224 (2) (596 SE2d 651) (2004) (ordering new trial when trial court failed to instruct jury to disregard testimony that defendant had been a victim of child molestation and when the evidence was not overwhelming), cert. denied, overruled on other grounds, *Schofield v. Holsey,* 281 Ga. 809 (642 SE2d 56) (2007); *Griffin,* 242 A.D.2d at 73 (instruction was insufficient to cure prejudicial effect of question concerning defendant's masturbation).

(c) Because the issues raised by Herring's motion in limine are likely to recur on retrial, we also consider whether the trial court also erred when it authorized the State to present evidence concerning Herring's sexual history.

As it announced in opening argument, the State's theory was that because Herring was incapable of forming adult sexual attachments, he was more likely to molest children. By portraying Herring as sexually inexperienced and frustrated, the State hoped to show that Herring had "a motive to engage in sexual behavior with a weaker, compliant victim when suddenly presented with an opportunity" — that is, that Herring's sexual disposition led him to commit the crime charged. This topic was likewise impermissible in the absence of evidence linking it to the charged offense. The trial court was therefore correct when it barred explicit references to Herring's virginity, but erred when it allowed the State to inquire in less specific ways about Herring's sexual history. See *Simpson,* 271 Ga. at 774 (1) (interest in sexual activity does not justify admission of evidence showing such interest in the absence of a link to the crime charged); *Tyler,* 266 Ga. App. at 223 (2) (although testimony that defendant was himself a victim of child molestation "technically may not have constituted bad character evidence," it placed character in issue "in a way that was clearly harmful and irrelevant").

3. The remaining errors asserted by Herring are either moot or unlikely to recur at trial.

For the above reasons, the trial court erred when it denied Herring's motion for new trial.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 10, 2007 —
RECONSIDERATION DENIED NOVEMBER 1, 2007 —

*Gabrielle A. Pittman, Jennifer R. Burns*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Gregory M. McConnell, Assistant District Attorneys*, for appellee.