### S97A0395. CRAWFORD v. THE STATE.
(485 SE2d 461)

SEARS, Justice.

Crawford appeals from his conviction for the murder of his wife,[1] claiming that the trial court abused its discretion by denying his motion for the appointment of a medical expert to aid in his defense. Because the evidence submitted in support of Crawford's motion

---

[1] The murder took place the week of December 4, 1995, and the victim's body was discovered on December 8, 1995. Crawford was indicted on March 18, 1996, and was tried on May 20-22, 1996. On May 22, 1996, the jury found Crawford guilty of murder, concealing the death of another, and battery. He was sentenced by the trial court to life imprisonment as to the murder count, and twelve months imprisonment as to each of the other two counts. Crawford filed a motion for new trial on June 19, 1996, which was denied by the trial court on September 24, 1996. The transcript was certified by the court reporter on August 19, 1996, and Crawford timely filed his notice of appeal on October 22, 1996. The appeal was docketed with this Court on December 4, 1996, and submitted for decision without oral argument on January 27, 1997.

failed to establish that he was entitled to the appointment of an expert, we determine that the trial court did not abuse its discretion, and we affirm.

The evidence submitted at trial would have authorized a reasonable finder of fact to determine that the Crawfords' marriage was marked by alcoholism and Crawford's physical abuse of his wife, Peggy. In December 1995, concerned over not having seen or heard from Peggy for several days, her landlord knocked on the door to the Crawfords' apartment, and asked whether everything was alright. Crawford answered through the door that everything was fine. The next day, the landlord and one of Peggy's sisters entered the Crawfords' apartment, where they discovered Peggy's body in an early state of decomposition. An autopsy later revealed that she had been strangled.

After Peggy's body was found, investigators located Crawford at Northwest Regional Hospital. Crawford had been transferred to Northwest Regional after presenting himself at Polk General Hospital, complaining of depression and suicidal thoughts. At Northwest Regional, Crawford had been placed under a suicide watch, and had been given antidepressant medication. Investigators testified that when they spoke to Crawford at the hospital, he appeared coherent and stated that he understood both his rights after they were explained to him and the questions that were asked of him. Crawford executed a waiver of rights form presented to him by the investigators. He initially denied involvement with Peggy's death, but then admitted that he had choked Peggy for two to three minutes during an argument. He also admitted battering Peggy before choking her, and said he did not call anyone after choking Peggy because he became frightened.

After being released from the hospital, Crawford was taken to the Polk County jail, where his rights were explained to him a second time, and he again said that he understood those rights. He then stated that Peggy had died when he stood up from a chair in which he was sitting, and tripped and fell on top of her neck, accidentally choking her. Thereafter, he again admitted to choking Peggy, but said that he did not mean to kill her, but rather intended just to scare her, and had gone "too far." At trial, Crawford again changed his story, this time claiming that before she died, Peggy had been drinking heavily, and had suffered a seizure. Crawford claimed that when he tried to bring her out of the seizure, he accidentally suffocated her.

At trial, the State's expert pathologist, Dr. Parker, opined that based upon the autopsy he performed, Peggy died of strangulation, and her death was an intentional homicide. Dr. Parker stated that the injuries he observed to Peggy's neck and trachea were consistent with strangulation, and were inconsistent with her having suffered a

seizure. He also confirmed that at the time of her death, Peggy had a high alcohol blood level. Dr. Parker conceded that some of Peggy's physical symptoms could have been consistent with a heart attack, and that heart attack could not entirely be ruled out as the cause of death. He also conceded that some typical physical characteristics of strangulation, such as fingernail imprints, were not present on Peggy's neck.

1. The evidence introduced at trial was such that a rational trier of fact could have found Crawford guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. In his sole enumeration of error, Crawford, who was an indigent for purposes of the appointment of defense counsel, claims that the trial court erred in denying his motion for funds to hire an expert forensic pathologist to assist in his defense. In his motion for appointment of an expert, Crawford asserted only that "it was necessary to his defense to have autopsy and other forensic and medical evidence reviewed by a medical expert and perhaps for testimony at trial to be able to properly defend his case." Crawford also asserted that he had contacted an unnamed forensic pathologist, and he recited that pathologist's fees for expert services.

The authority to grant or deny a criminal defendant's motion for the appointment of an expert witness rests with the sound discretion of the trial court, and, absent abuse of that discretion, the trial court's ruling will be upheld.[3] Motions for the appointment of defense experts made on behalf of indigent defendants should disclose to the trial court with reasonable precision "why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services."[4] Without this information, it is difficult for a trial court to assess the need for assistance.[5]

In this case, Crawford's motion contained none of these elements. It failed to explain to the trial court what kind of expert was required, other than to state broadly that the services of a "medical expert" were sought, and that an unnamed "forensic pathologist" had been contacted. Nor did Crawford's motion detail the qualifications of the expert sought, or the tests that would be performed by that expert. While the motion did state that Crawford desired to have "autopsy and other forensic and medical evidence" reviewed by a defense expert, it failed to explain why the evidence upon which that

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Roseboro v. State*, 258 Ga. 39 (365 SE2d 115) (1988); *Jackson v. State*, 249 Ga. 751, 755 (295 SE2d 53) (1982).
[4] *Roseboro*, 258 Ga. at 41.
[5] Id.

expert would focus was critical.[6] Moreover, the motion did not explain why there might be varying expert opinions drawn from the study of the "autopsy and other forensic and medical evidence," and did not intimate that the individuals responsible for the State's preparation of that evidence were unqualified or biased.[7] Furthermore, the motion did not identify by name and qualifications a specific expert sought by Crawford.[8] While the motion did recite the anticipated fees that would be charged by an unnamed expert, it failed to estimate the total cost of the expert services sought.[9]

Therefore, it is clear that the evidence before the trial court failed to establish that Crawford was entitled to the appointment of a defense expert,[10] and the trial court did not abuse its discretion in denying Crawford's request.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 1997.

*Stewart & Holmes, J. Calloway Holmes, Jr.,* for appellant.
*James R. Osborne, District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

