**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

April 30, 2013

# In the Court of Appeals of Georgia

A13A0081. ROLLAND v. THE STATE.

BARNES, Presiding Judge.

A jury found Keno Rolland guilty of driving under the influence to the extent it was less safe for him to drive ("DUI less safe"), driving under the influence of alcohol with an unlawful blood-alcohol concentration ("DUI per se"), and failure to maintain a lane. Rolland filed a motion for new trial, which the trial court denied. On appeal, Rolland contends that (1) the trial court impermissibly commented on the evidence in violation of OCGA § 17-8-57; (2) the trial court abused its discretion in denying his motion for funds to hire an expert to testify at the new trial hearing; and (3) his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). So viewed, the evidence showed that at approximately 1:00 a.m., a patrol officer with the Athens-Clarke County Police Department observed a vehicle driven by Rolland traveling westbound on Lexington Road. The officer determined by radar that the vehicle was traveling 62 mph in a posted 45 mph zone and observed that the vehicle failed to maintain its lane twice. The officer activated his emergency lights, but Rolland traveled an additional half a mile before stopping his vehicle. Once Rolland brought his vehicle to a complete stop, half of his vehicle was still on the road and half was on the shoulder of the road. Concerned that the vehicle was only partially off of the road, the officer approached Rolland and requested that he move his vehicle to a safer location, and Rolland complied.

When the officer again approached the vehicle, Rolland presented his driver's license, apologized for failing to maintain his lane, and told the officer that he had drifted out of his lane because he had been looking at the cover of a video he had just purchased. As Rolland spoke, the officer smelled alcohol on his breath and observed that his eyes were bloodshot. The officer asked Rolland if he had been drinking

2

alcohol. Rolland initially denied drinking, but ultimately admitted that he had consumed two beers and a shot of vodka.

The officer asked Rolland to exit from his vehicle and submit to a series of field sobriety tests. After obtaining Rolland's consent, the officer administered three field sobriety tests – the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one-leg stand. Rolland exhibited six out of six clues of impairment on the HGN test, four out of eight clues on the walk-and-turn test, and four out of four clues on the one-leg stand test. He also tested positive for the presence of alcohol on the officer's handheld alcosensor breath testing device.

Based on his observations, the officer formed the opinion that Rolland was under the influence of alcohol to the extent that he was less safe to drive. He arrested Rolland and read to him the implied consent warning for drivers over the age of 21. Rolland agreed to a State-administered breath test. The officer transported Rolland to jail and administered two breath tests on the Intoxilyzer 5000. The first breath sample taken at 1:47 a.m. showed a blood-alcohol concentration of .087 grams, and the second sample taken three minutes later showed a concentration of .086 grams.

Rolland was charged by accusation with DUI less safe, DUI per se, and failure to maintain a lane. At trial, the sole witness was the patrol officer who had conducted

3

the traffic stop and administered the breath test, and he testified to the events as set out above. The officer further testified that he had a valid permit to operate the Intoxilyzer 5000, that the machine appeared to be in good working order with no components or parts missing on the day of Rolland's arrest, and that the machine successfully passed all self-diagnostic tests that were performed when Rolland's breath samples were taken. Additionally, through the officer's testimony, the State introduced two certificates of inspection for the Intoxilyzer 5000, reflecting that the machine had been thoroughly inspected and tested by the Georgia Bureau of Investigation, Division of Forensic Sciences, approximately two months before Rolland's arrest and three months after his arrest.

The jury found Rolland guilty of the three charged offenses. Rolland moved for a new trial, contending, among other things, that his trial counsel had been ineffective. To support his ineffective assistance of counsel claim, Rolland also moved for funds to hire an expert to testify at the new trial hearing about the accuracy of the Intoxilyzer 5000 results. The trial court denied Rolland's motion for funds to

hire an expert, and, after conducting an evidentiary hearing, denied his motion for new trial. This appeal followed.[1]

1. Rolland contends that the trial court impermissibly commented on the evidence on two separate occasions by making statements in the presence of the jury "about the history and accuracy of Georgia's Intoxilyzer machines." "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. Regardless of whether defense counsel objected, if the trial court violates this statutory provision, we are "required to order a new trial, and there can be no finding of harmless error." (Footnotes omitted.) *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006). See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010). Mindful of these principles, we turn to the two

---

[1] We initially remanded Rolland's appeal to the court below on the ground that it was not ripe for review because the trial court had entered a written sentence on only one of the counts and had made no notation of any merger of counts. See *Bass v. State*, 284 Ga. App. 331, 332 (643 SE2d 851) (2007). On remand, the trial court entered a revised written sentence in which the court noted that Rolland's DUI less safe conviction merged into his DUI per se conviction and sentenced Rolland on his convictions for DUI per se and failure to maintain a lane. The case was then transmitted back to this Court for re-docketing because the notice of appeal, at that point, had ripened. See id.

occasions in which Rolland contends that the trial court made impermissible comments.

(a) During defense counsel's cross examination of the patrol officer, counsel asked a series of questions regarding the history of the Intoxilyzer 5000 model. The following exchange occurred:

> DEFENSE COUNSEL: And you transported [Rolland] to the jail where there is an Intox 5000.
>
> OFFICER: I did.
>
> DEFENSE COUNSEL: Now that is the model that is used here in Georgia as you stated earlier, and that is the model that Georgia actually adopted in 1994. Is that correct?
>
> OFFICER: I can't speak to when it was adopted. I do know that's the only unit used in Georgia.
>
> DEFENSE COUNSEL: How long have you been on the force you said?
>
> OFFICER: Since 2003.
>
> DEFENSE COUNSEL: And that's been the machine you used the entire time.

OFFICER: That's correct.

DEFENSE COUNSEL: And the Intox model was being used well before that.

OFFICER: It's my assumption, yes.

DEFENSE COUNSEL: Would it surprise you to know that it's been used for over 25 years in Georgia?

OFFICER: No.

PROSECUTOR: Your Honor, I don't believe that that's correct information that she's giving the witness. There [have] been other models of the Intoxilyzer that have been used, but this officer can't testify as to what was used prior to his becoming a police officer. I think this is an improper line of questioning.

TRIAL COURT: I don't think that this officer has any ability to testify, but I think that your question is inaccurate to begin with because there have been various models since the fifties that have been breath testing instruments.

DEFENSE COUNSEL: Yes, sir, since the fifties, absolutely.

7

TRIAL COURT: Right. But . . . I think your question was inappropriate and inaccurate because I don't think that the instrument that's being used and has been used most recently has been in use for 25 years.

DEFENSE COUNSEL: No, sir, not the individual model.

TRIAL COURT: . . . [W]ell, that's what you said, as I understood you said for 25 years, and I don't think that's an accurate statement but you may proceed.

DEFENSE COUNSEL: And just to clarify, you said since you joined the force in 2003 the Intox 5000 was being used by Georgia.

OFFICER: Well, I became certified to operate the Intox in 2005, and I know for a fact since then, that has been what has been used in Georgia.

Contrary to Rolland's argument, the colloquy between the trial court and defense counsel did not violate OCGA § 17-8-57. Read in context, the trial court's remarks were aimed at redirecting defense counsel away from a series of questions about the history of the Intoxilyzer 5000 that required the testifying officer to speculate and that assumed facts not in evidence about how long that model had been used in Georgia. OCGA § 17-8-57 does not prohibit a trial court from inquiring into the direction defense counsel is going with a particular line of questioning and

8

encouraging counsel to move forward. See *Butler v. State*, 290 Ga. 412, 416 (4) (721 SE2d 876) (2012); *Creed v. State*, 255 Ga. App. 425, 427 (1) (565 SE2d 480) (2002). See also *Adams v. State*, 282 Ga. App. 819, 824 (4) (640 SE2d 329) (2006) (trial courts are authorized "to control the conduct of the trial and to guide the defense attorney to ensure a fair trial and the orderly administration of justice").

Rolland, however, argues that the trial court's comments went beyond redirecting defense counsel's line of questioning about the history of the Intoxilyzer 5000 because the court assumed certain things as facts that had not been proven during the trial of the case. Specifically, the trial court stated that "there have been various models since the fifties," and "I don't think that the instrument that's being used and has been used most recently has been in use for 25 years." As Rolland points out, there was no testimony at trial reflecting that various models of the Intoxilyzer had been used since the 1950s or that the current model, the Intoxilyzer 5000, had been in use for less than 25 years.

It is true that OCGA § 17-8-57 is violated when "the court's comment assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." (Citation and punctuation omitted.) *Johnson v. State*, 222 Ga. App. 722, 727 (6) (475 SE2d 918) (1996). "Courts of this State have always recognized, however,

9

that a statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of this statute." *Sauerwein*, 280 Ga. at 439 (2). See *Thomas v. State*, 27 Ga. App. 38, 40 (107 SE 418) (1921) (statute prohibiting expressions of opinion by trial court regarding what has or has not been proven "refers to the expression or intimation of an opinion touching some fact at issue in the case, and not to something that is conceded by both parties") (citations and punctuation omitted). Here, the record reflects that when the trial court made its comments regarding the history of the Intoxilyzer, defense counsel *expressly agreed with them* and then went on to clarify her question about the history of the Intoxilyzer to the patrol officer. There is no violation of OCGA § 17-8-57 "when the complaining party agrees with the remarks when they are made" by the trial court. *Barnes v. State*, 269 Ga. 345, 355 (16) (496 SE2d 674) (1998). Moreover, at the close of the trial, the trial court charged the jury,

> [t]he court, that is I, intimate and express no opinion as to what facts have or have not been proven by the evidence in this case or as to what inferences are or are not to be logically deduced by you from the facts and circumstances and proof, or as to what your verdict should be, but I submit the whole question of fact and every question of fact to you for your determination without judicial interference.

In these circumstances, we cannot say that the trial court violated OCGA § 17-8-57. See *Ellis v. State*, 292 Ga. 276, 282 (3) (736 SE2d 412) (2013); *Creed*, 255 Ga. App. at 428 (1).[2]

(b) Also during the cross examination of the patrol officer, defense counsel attempted to question him about a newer model of the Intoxilyzer. The following exchange occurred:

> DEFENSE COUNSEL: And are you aware that there is an Intoxilyzer 8000 that exists on the market?
>
> PROSECUTOR: Your Honor, I'm going to object. That's not an instrument that's used in the state of Georgia. It's not relevant to this case.
>
> TRIAL COURT: I totally sustain that objection, counsel, and there's no basis for which to even ask that question. The instrument that's in use today and has been approved by the Department of Forensic Services in the state of Georgia is the instrument that this officer, I think, has admitted his permit in connection therewith, so I think you already know

---

[2] Although a new trial is not required in this case as a result of the trial court's comments, "we take this opportunity to warn trial courts to avoid making the type of remarks made by the trial court in this case in order to diligently avoid any appearance of partiality." *Sauerwein*, 280 Ga. at 440 (2).

11

the answer to the question as to which instrument is being currently used. I mean, I think that's in evidence.

DEFENSE COUNSEL: Yes, sir, that is in evidence.

TRIAL COURT: And the one he's been trained and certified to operate. You can ask him questions about that, but some other instrument that has not been accepted or approved by the state of Georgia is actually irrelevant. So I sustain the objection.

DEFENSE COUNSEL: I'll move on, Your Honor.

Again, we conclude that the colloquy between the trial court and defense counsel fails to disclose a violation of OCGA § 17-8-57. The trial court's statements were clearly intended to explain its reason for sustaining the State's relevancy objection to questions about the Intoxilyzer 8000. "A trial judge's explanation for a ruling on an objection neither constitutes an expression of opinion nor amounts to a comment on the evidence." (Citations and punctuation omitted.) *Williams v. State*, 303 Ga. App. 222, 232 (8) (692 SE2d 820) (2010). See *Boyd v. State*, 286 Ga. 166, 168 (3) (686 SE2d 109) (2009) ("Pertinent remarks made by a trial court in discussing the admissibility of evidence or explaining its rulings do not constitute prohibited expressions of opinion.") (citations and punctuation omitted). Furthermore, as

12

previously noted, the trial court later charged the jury that the court did not intimate or express any opinion about what facts had or had not been proven in the case. Accordingly, we discern no violation of OCGA § 17-8-57. See *Ellis*, 292 Ga. at 282 (3); *Creed*, 255 Ga. App. at 428 (1).

2. Rolland also contends that the trial court abused its discretion in denying his motion for funds to hire an expert to testify at the new trial hearing in support of his ineffective assistance of counsel claim. He maintains that an expert was critical to his argument that his trial counsel was ineffective for failing to seek funds for or subpoena an expert to challenge the accuracy of the Intoxilyzer results at trial.

"The authority to grant or deny a criminal defendant's motion for the appointment of an expert witness rests with the sound discretion of the trial court, and, absent abuse of that discretion, the trial court's ruling will be upheld." *Crawford v. State*, 267 Ga. 881, 883 (2) (485 SE2d 461) (1997). Among other things, the motion should "identify by name and qualifications a specific expert" sought by the defendant. Id. at 884 (2). See *Hall v. State*, 255 Ga. App. 631, 633 (3) (566 SE2d 374) (2002) (motion for funds to hire an expert should include, among other things, "the identity of the expert"). Compare *Dingler v. State*, 281 Ga. App. 721, 722 (1) (637 SE2d 120) (2006) (motion for funds not defective for failing to identify expert by

name, where "the identity of [the defendant's] proposed expert was known to the trial court since the court previously had provided [the defendant] with funds to enter into preliminary discussions with his proposed expert"). Furthermore, when a defendant makes a post-trial motion for funds to hire an expert, the defendant must show that the trial court's denial of the motion prejudiced him in some manner. See *Towry v. State*, 304 Ga. App. 139, 147 (2) (f), n. 6 (695 SE2d 683) (2010).

Rolland cannot show that the trial court abused its discretion in denying his post-trial motion for funds because his written motion failed to identify by name and qualifications a specific expert sought by him, and, unlike in *Dingler*, the trial court had not otherwise been made aware of the identity of a proposed expert through prior proceedings in the case. Moreover, Rolland cannot show that he suffered any prejudice as a result of the trial court's denial of his motion. Rolland sought an expert to testify at the new trial hearing to support his claim that his trial counsel had been ineffective for failing to secure an expert to challenge the accuracy of the Intoxilyzer 5000 results at trial. But, as explained infra in Division 3 (a), Rolland cannot succeed on the prejudice prong of his ineffective assistance claim because any expert testimony introduced at trial would have been cumulative of evidence that was elicited from the patrol officer on cross examination. Consequently, Rolland cannot

14

show that he was prejudiced by the denial of his post-trial motion for funds to hire an expert, given that expert testimony at the new trial hearing would not have changed the fact that Rolland could not succeed on his ineffective assistance claim. See *Towry*, 304 Ga. App. at 147 (2) (f), n. 6.

3. Rolland argues that his trial counsel was ineffective in two separate respects.

> In order to succeed on his claim of ineffective assistance, [Rolland] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (104 S Ct 2052, 80 LE2d 674) (1984). If [Rolland] fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Lynch v. State*, 291 Ga. 555, 556 (2) (731 SE2d 672) (2012).

(a) Rolland first contends that this trial counsel was ineffective for failing to seek funds for or subpoena an expert who could challenge the accuracy of the Intoxilyzer 5000 results. At the new trial hearing, Rolland proffered that such an expert would have testified about the "built-in error in the breath sampling" and the

15

"lack of perfection in the result that's ticked out [from the Intoxilyzer]."[3] More specifically, Rolland contends that expert testimony would have shown that the measurement of blood-alcohol concentration by the Intoxilyzer 5000 has a "sampling variability" or "margin of error" of plus or minus .01 grams. Because Rolland's first breath sample showed a blood-alcohol concentration of .087 grams and his second sample showed a concentration of .086 grams, Rolland maintains that expert testimony about the "sampling variability" or "margin of error" would have supplied the jury with a reasonable basis for finding that his blood-alcohol concentration was actually below the legal limit of .080 grams. See OCGA § 40-6-391 (a) (5). As such, Rolland argues that expert testimony was critical in this case and that his trial counsel was ineffective for failing to secure such testimony at the trial.

Pretermitting whether Rolland's trial counsel was deficient for failing to seek funds for or subpoena an expert at trial, we conclude that Rolland's ineffective assistance claim fails because he cannot show prejudice resulting from the alleged

---

[3] Rolland asserts in a separate enumeration of error that at the new trial hearing, the trial court improperly refused to allow him to make a proffer of what an expert on the accuracy of Intoxilyzer test results would have testified. However, the transcript of the new trial hearing reflects that while the trial court initially denied Rolland's request to make a proffer of the expert's testimony, the court allowed Rolland to go forward with a proffer at the end of the hearing.

16

deficiency. The failure to call an expert at trial does not prejudice the defendant if the expert's testimony would have been cumulative of testimony elicited from other witnesses by defense counsel during trial. See *Gibbs v. State*, 316 Ga. App. 431, 432 (729 SE2d 563) (2012); *Tyler v. State*, 279 Ga. App. 809, 814 (3) (b) (632 SE2d 716) (2006), disapproved in part on other grounds by *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n. 1 (642 SE2d 56) (2007). See also *Wesley v. State*, 286 Ga. 355, 358 (3) (h) (689 SE2d 280) (2010) (pointing out that "trial counsel's failure to present cumulative evidence through additional testimony does not amount to ineffective assistance"). Here, the expert's testimony would have been cumulative of testimony elicited from the patrol officer on cross examination.

The record reflects that during the cross examination of the patrol officer, Rolland's trial counsel asked a series of questions about the accuracy of the results generated by the Intoxilyzer 5000 based on the officer's training and certification to operate the machine. The patrol officer admitted that the "there's a sampling variability of .010 grams" and that this variability reflects "a margin of error for the breath sample." When asked if that "essentially means that the breath sample number that comes out on the ticket [from the Intoxilyzer] . . . could be a .010 grams plus or minus what the actual blood content is," the officer responded, "That's correct."

17

During closing argument, trial counsel highlighted the patrol officer's testimony about the accuracy of the Intoxilyzer 5000 results and argued that the officer's testimony

> means with sample variability that [Rolland] could have blown a .076 and a .077 if that machine was operating perfectly on the night he was arrested. Now, ladies and gentleman, honestly if that's not a reasonable doubt, I'm not sure what is. We've heard it clearly from the officer that there is that sample variability within the machine. . . . It doesn't sound like a completely accurate test when we're talking about blood alcohol concentrations that are this low.

In light of the patrol officer's testimony about the accuracy of the Intoxilyzer results and the emphasis placed upon it by trial counsel during closing argument, there is no reasonable probability that the outcome of the trial would have been different if Rolland's trial counsel had requested funds and called an expert. Accordingly, the trial court did not err in denying Rolland's motion for a new trial predicated on this ineffective assistance claim. See *Humphrey v. Morrow*, 289 Ga. 864, 874 (II) (B) (2) (717 SE2d 168) (2011); *Wesley*, 286 Ga. at 358 (3) (h); *Tyler*, 279 Ga. App. at 814 (3) (b).

(b) Rolland further contends that his trial counsel was ineffective for failing to

object to testimony from the patrol officer on direct examination that a defendant who exhibits four out of six clues on the HGN field sobriety test has "a 77 percent probability that he is impaired." As with the previous allegation of ineffective assistance, we need not determine whether Rolland's trial counsel was deficient for failing to object to this testimony because Rolland cannot prove that he was prejudiced by the failure.

During his rebuttal to the State's case in closing argument, Rolland's trial counsel confronted the patrol officer's testimony and argued,

> [The officer] also said that if the [HGN] test is done completely accurately and someone fails that test that it's 77 percent accurate. Well, what that means is that it's 23 percent wrong. It's wrong 23 percent of the time, even if it's done exactly right. . . . [I]f you're wondering what a reasonable doubt is, it might be 23 percent of the time.

In light of this rebuttal, and given the significant evidence supporting Rolland's DUI less safe conviction, "we cannot find a reasonable probability that the outcome of the case would have been different if trial counsel had objected to the allegedly improper statement." (Citation and punctuation omitted.) *Brown v. State*, 293 Ga. App. 633, 637 (1) (d) (i) (667 SE2d 899) (2008).

*Judgment affirmed. Miller and Ray, JJ., concur.*