**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 6, 2023**

# In the Court of Appeals of Georgia

A22A1399. SPEARS v. THE STATE.

BROWN, Judge.

Janorris Spears appeals his convictions for criminal attempt to commit armed robbery, armed robbery, false imprisonment, aggravated assault, and conspiracy to commit armed robbery. For the following reasons, we affirm, but we vacate Spears' sentence for his conviction for conspiracy to commit armed robbery and remand for resentencing.

Viewed in the light most favorable to the verdict,[1] the evidence at trial shows that on July 26, 2014, Ricky Hudson arranged for Jerome Banks, Sr., and Terry Denham to sell drugs to Claude Dickerson. However, Banks and Denham planned to rob Hudson and Dickerson, and recruited John Husband to help them. Hudson,

---

[1] See *Patch v. State*, 337 Ga. App. 233, 235 (1) (786 SE2d 882) (2016).

Dickerson, Banks, and Denham went to an apartment complex to complete the supposed drug deal. While Hudson and Dickerson were in a stairwell, Banks pointed a gun at Dickerson, and Husband and another man — alleged by the State to be Spears — ambushed Hudson and pointed guns at him. Husband and the other man robbed Hudson and forced him inside an apartment, but he jumped out of a window and ran away. Banks shot and killed Dickerson in the stairwell.

Banks identified Spears as a participant in the armed robbery. Husband and Spears are friends, and police officers found DNA belonging to both of them on a freshly smoked cigarette butt in the stairwell where the incident occurred. Hudson testified at trial that one of the two men who ambushed him was short while the other was tall. Hudson identified Husband as the tall man, but could not positively identify the short man. Husband is five inches taller than Spears.

Cell phone records indicated the following. Spears' phone and Husband's phone communicated throughout the day of the incident. Shortly before the incident, Husband's phone went to the area of Spears' apartment and called Spears' phone. The two phones then went to the incident area, were there at the time of the incident, and returned to the area of Spears' apartment shortly thereafter.

Spears was interviewed by police officers and denied any involvement in the incident, stating that he was at his apartment with his girlfriend at the time. Spears' girlfriend spoke with officers and could not provide any information as to his whereabouts on the day of the incident. After Spears' arrest, he told his girlfriend that she needed to testify that he was with her during the incident. Spears' girlfriend testified at trial that he was in and out of their apartment around the time of the incident.

The jury found Spears guilty of the attempted armed robbery of Dickerson, the armed robbery of Hudson, the false imprisonment of Hudson, the aggravated assault of Hudson, and conspiracy to commit armed robbery. The jury acquitted Spears of malice murder, felony murder, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. The jury deadlocked on two counts of felony murder and one count of aggravated assault.

1. *Jurisdiction.* We disagree with the State's argument that we lack jurisdiction over this appeal because it is untimely. On November 21, 2017, the trial court issued a judgment of conviction on the five counts of which Spears was found guilty, while placing on the dead docket the three counts on which the jury deadlocked. Spears filed a timely motion for new trial, which the trial court denied on December 8, 2020.

3

On December 21, 2020, Spears filed a notice of appeal referencing his judgment of conviction and the denial of his motion for new trial. This Court dismissed the appeal, explaining that under *Seals v. State*, 311 Ga. 739 (860 SE2d 419) (2021), Spears' case was not final because of the dead-docketed counts. *Spears v. State*, 360 Ga. App. 776 (861 SE2d 619) (2021).

On August 20, 2021, the trial court issued an order of nolle prosequi as to the dead-docketed counts, as well as an amended judgment of conviction which reflected this fact and that the amended judgment was imposed nunc pro tunc November 21, 2017. Spears did not file a notice of appeal within 30 days. Instead, he filed a motion for out-of-time appeal in January 2022, which the trial court granted. On March 3, 2022, Spears filed a notice of appeal referencing the grant of his motion for out-of-time appeal, the denial of his motion for new trial, and his amended judgment of conviction. Based on the holding in *Cook v. State*, 313 Ga. 471, 505-506 (5) (870 SE2d 758) (2022), that a trial court lacks authority to grant an out-of-time appeal, this Court vacated the trial court's order on the motion for out-of-time appeal and remanded with instructions to dismiss the motion. Case No. A22A1192 (Apr. 11, 2022). After the trial court dismissed the motion, Spears filed an "amended notice of appeal and request to transmit record to Georgia Court of Appeals," which has been

docketed as this appeal. We conclude that we have jurisdiction because Spears' initial December 21, 2020 notice of appeal ripened upon entry of the amended judgment of conviction.

Pursuant to OCGA § 5-6-38 (a), a notice of appeal must be filed "within 30 days after entry of the appealable decision or judgment complained of." "[A]nd a timely-filed notice of appeal is a jurisdictional prerequisite to a valid appeal." (Citation and punctuation omitted.) *Bowman v. State*, 358 Ga. App. 612, 613 (1) (856 SE2d 11) (2021). "At the same time, it is the public policy of this State to consider cases on the merits whenever possible," particularly criminal cases. Id.; see also OCGA § 5-6-30 ("[T]his article shall be liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be specifically referred to in this article."); *Livingston v. State*, 221 Ga. App. 563, 564 (1) (472 SE2d 317) (1996) (discussing this State's public policy to bring about a decision on the merits of criminal cases).

"The concept of a notice of appeal ripening is well established in the context of appeals from criminal convictions and motions for new trial." *Bowman*, 358 Ga. App. at 614 (1); see, e.g., *Berrien v. State*, 300 Ga. 489, 491 (1) n.2 (796 SE2d 718)

(2017) ("[A] notice of appeal that is untimely from the final judgment may become a premature notice of appeal that ripens when an order dismissing a motion for new trial is entered."); *State v. Hood*, 295 Ga. 664, 664-665 (763 SE2d 487) (2014) (a notice of appeal filed while a motion for new trial is pending ripens upon denial of the motion); *McCulley v. State*, 273 Ga. 40, 43 (4) n.3 (537 SE2d 340) (2000) (a notice of appeal filed after the oral pronouncement of a sentence ripens upon the entry of the written sentence). This Court has held that where an initial judgment of conviction is not final, in that it does not include a written sentence on each count of which the defendant was found guilty, and the defendant files a notice of appeal, the notice ripens upon entry of an amended judgment of conviction disposing of all counts. See *Perry v. State*, 329 Ga. App. 121 (764 SE2d 178) (2014); *Harless v. State*, 325 Ga. App. 868, 868-869 (755 SE2d 814) (2014); *Rolland v. State*, 321 Ga. App. 661, 662 n.1 (742 SE2d 482) (2013).

The Supreme Court of Georgia has detailed the bases for the concept of ripening:

> The word "within," when used with reference to time, is generally a word of limitation that means "not beyond" or "not later than" — fixing the end, but not the beginning, of a period. Consequently, we properly treat a premature notice of appeal — which "shall be filed within 30

6

days after" entry of the appealable judgment or the order disposing of a motion for new trial — as effectively filed, vesting jurisdiction in the appellate court, upon entry of the judgment or an order denying a motion for new trial.

. . .

[A]n early . . . notice of appeal is simply dormant in its effect and not legally cognizable before the judgment about which it complains is entered of record. Once that judgment is entered, the early . . . notice of appeal ripens and becomes as timely as any notice could ever be. It would be pointless and go beyond the statutory mandate to deem such premature . . . notices of appeal void — so long as they sufficiently indicate the judgment from which relief is sought — when they are filed at any time prior to the expiration of the 30-day time limits in OCGA § . . . 5-6-38 (a), which are designed to keep the case moving towards final disposition while affording a reasonable opportunity for the losing party to consider [an] appeal.

(Citations and punctuation omitted.) *Southall v. State*, 300 Ga. 462, 464-467 (1) (796 SE2d 261) (2017).

Contrary to the State's position here, the concept of ripening is not confined to cases where the trial court orally pronounces a ruling, the defendant files a notice of appeal, and the trial court issues a written ruling. In *Bowman*, before the trial court

7

ruled on the defendant's initial motion for pro bono attorney, the defendant filed a motion to vacate void sentence, for a hearing to withdraw plea, and for pro bono attorney. 358 Ga. App. at 612-613. On July 16, 2019, the trial court issued an order denying the initial motion for pro bono attorney. Id. at 613. Four months later, the defendant filed a notice of appeal indicating that he was appealing from "the judgment denying his motion to vacate void sentence and pro bono attorney entered on July 16, 2019." Id. However, a written order on the defendant's motion to vacate void sentence, for a hearing to withdraw plea, and for pro bono attorney was not entered until after he filed his notice of appeal. Id. This Court held that the notice of appeal, while untimely from the July 16, 2019 order, ripened when the subsequent order was filed. Id. at 613-614 (1).

Here, Spears' initial notice of appeal ripened upon entry of the amended judgment of conviction for the following reasons. We remain mindful of "the broad applicability of the ripening doctrine and our mandate to liberally construe statutes so as to bring about a decision on the merits of a case whenever possible." *Bowman*, 358 Ga. App. at 614 (1). Significantly, Spears' initial notice of appeal clearly referenced his convictions and the denial of his motion for new trial. Because Spears seeks appellate review of these matters in this appeal, and because he has made his

8

intent to seek such review clear for years, the State will not be prejudiced by our consideration of this case. See *Livingston*, 221 Ga. App. at 565 (1) (a premature notice of appeal "must clearly indicate the order from which it seeks relief; otherwise prejudice to the appellee may result"); cf. *Isaac v. State*, 237 Ga. App. 723, 727 (3) n.2 (516 SE2d 723) (1999) (notice of appeal, which referenced judgment of conviction and did not purport to address a pending motion to withdraw guilty plea, did not ripen upon denial of motion). Finally, we note that with the elimination of the out-of-time appeal procedure, Spears would lose any right to a direct appeal if we dismissed this case. See *Cook*, 313 Ga. at 505-506 (5).

2. *Sufficiency.* Spears claims that the evidence was insufficient to support his convictions because it did not establish that he was present for, had knowledge of, or participated in the armed robbery of Dickerson and Hudson. We disagree.

"When evaluating the sufficiency of evidence as a matter of constitutional due process, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *McIntyre v. State*, 312 Ga. 531, 531 (1) (863 SE2d 166) (2021) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This Court does not

9

reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) Id.

(a) OCGA § 16-2-20 (a) says that anyone "concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (b) explains that a person is "concerned in the commission of a crime" if he, inter alia, "[i]ntentionally aids or abets" the commission of the crime or "[i]ntentionally advises, encourages, hires, counsels, or procures" another person to commit the crime. "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation and punctuation omitted.) *Parks v. State*, 304 Ga. 313, 315 (1) (a) (818 SE2d 502) (2018). Criminal intent is a question for the jury. *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013).

The evidence here authorized the jury to find that Spears knowingly and intentionally participated in the armed robbery of Dickerson and Hudson and the offenses associated therewith. Significantly, Banks, who was one of the assailants, identified Spears as a participant in the armed robbery. The cell phone evidence

10

indicated that Spears communicated with Husband, another assailant, throughout the day of the incident, and that Spears and Husband arrived at and left the incident area together around the time of the incident. See *Thompson v. State*, 302 Ga. 533, 536-537 (II) (807 SE2d 899) (2017) (evidence supported defendant's convictions, where cell phone evidence showed that defendant was near the victims' home near the time the crimes occurred, testimony established that defendant recruited at least one participant in the robbery scheme that resulted in the victims' murders, police recovered the victims' car near defendant's home, and an unanswered call to the cell phone of one of the victims pinged off a tower near defendant's home shortly after the murders). And the DNA evidence indicated that Spears was with Husband in the exact incident location around the time of the crimes. See *Parks*, 304 Ga. at 316 (1) (a) (defendant's presence at the crime scene, his companionship with gang members who committed the crimes, and his actions during and after the crimes authorized jury to find that he was a party to the crimes).

Additionally, after Spears' girlfriend was initially unable to provide information as to his whereabouts during the incident, he instructed her to testify that he was with her at their apartment. The jury could use this attempt to influence a

witness as evidence of Spears' consciousness of guilt. See *Goodman v. State*, 313 Ga. 762, 767-768 (2) (a) (873 SE2d 150) (2022).

(b) Spears argues that his convictions are based solely upon circumstantial evidence, but the State failed to exclude the reasonable hypothesis that he and Husband shared a cigarette before Husband arrived at the incident location and that Husband finished the cigarette once he arrived. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). This argument fails, because Banks' identification of Spears as a participant in the armed robbery was direct evidence of Spears' guilt. See *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000) (witness' description of perpetrator that matched defendant's appearance constituted direct evidence of guilt).

(c) Spears also argues that his convictions for attempted armed robbery, armed robbery, and aggravated assault are inconsistent with his acquittal for possession of a firearm during the commission of a felony. However,

> [a]s a general rule, a guilty verdict cannot be challenged on the ground that the jury's verdict of guilt on one count of an indictment is

inconsistent with an acquittal on another count. Such verdicts are deemed constitutionally tolerable because they may reflect an exercise of lenity by the jury that is not necessarily grounded in its view of the evidence.

(Citation omitted.) *State v. Springer*, 297 Ga. 376, 377 (1) (774 SE2d 106) (2015). Thus, Spears cannot challenge his convictions on the basis that they are inconsistent with his acquittal on another count. See *Holmes v. State*, 272 Ga. 517, 519 (5) (529 SE2d 879) (2000) (rejecting defendant's argument that his convictions for felony murder and aggravated assault needed to be reversed because they were inconsistent with his acquittal on the charges of possession of a firearm and criminal damage to property).

3. *Merger of conspiracy to commit armed robbery into armed robbery.* Although Spears does not raise this issue, "we have the discretion to correct merger errors sua sponte." (Citation and punctuation omitted.) *Hawkins v. State*, 350 Ga. App. 862, 876 (9) (830 SE2d 301) (2019). The trial court sentenced Spears on his convictions for the armed robbery of Hudson and conspiracy to commit armed robbery. However, OCGA § 16-4-8.1 provides: "A person may be convicted of the offense of conspiracy to commit a crime . . . even if the crime which was the objective of the conspiracy was actually committed or completed in pursuance of the

13

conspiracy, but such person may not be convicted of both conspiracy to commit a crime and the completed crime." "[A] conviction for conspiring to commit an offense merges into a conviction for the completed offense for sentencing." *Ferguson v. State*, 335 Ga. App. 862, 869 (2) (783 SE2d 380) (2016). Accordingly, we vacate Spears' sentence for his conviction for conspiracy to commit armed robbery, and remand with direction to merge this sentence into his sentence for his armed robbery conviction. See *Johnson v. State*, 279 Ga. App. 182, 184 (2) (a) (630 SE2d 778) (2006) (remanding for resentencing when trial court failed to merge sentence for conviction for conspiracy to commit armed robbery into sentence for armed robbery conviction).

4. *Missing exhibits.* Spears argues that he has been denied a fair opportunity to appeal his convictions and deserves a new trial, because the appellate record does not contain two exhibits — State's Exhibits 201A and 207 — which he alleges are critical components of the trial transcript. Spears claims that Husband's first of two video-recorded police interviews was Exhibit 201, which was heavily redacted to remove all references to Spears and admitted as Exhibit 201A, but the record does not contain

or refer to Exhibit 201A.[2] Spears claims that Exhibit 207 is a transcript of Banks' plea hearing but is not in the record.

"[A] defendant convicted of a crime has a right to appeal, and a defendant convicted of a felony has a right to a transcript of the trial to use in bringing that appeal." *Johnson v. State*, 302 Ga. 188, 191 (3) (805 SE2d 890) (2017); see also OCGA § 5-6-41 (a) ("In all felony cases, the transcript of evidence and proceedings shall be reported and prepared by a court reporter as provided in Code Section 17-8-5 or as otherwise provided by law."). "If an appellant is deprived of an adequate transcript, he has effectively been deprived of his right to appeal." *Johnson*, 302 Ga. at 191 (3). While in felony cases the State is responsible for ensuring that a correct and complete transcript is created, preserved, and provided to the defendant upon his request, the defendant is not automatically entitled to a new trial if the State does not fulfill this duty. *Gadson v. State*, 303 Ga. 871, 878 (3) (a) (815 SE2d 828) (2018). Instead, it is well-established that the State's duty

> has no time limit and thus cannot relieve an appellant from a felony conviction of his statutory duty to "cause the transcript to be prepared and filed as provided by Code Section 5-6-41." OCGA § 5-6-42. Thus,

---

[2] The record in Case No. A22A1192 contains Husband's second police interview, State's Exhibit 202.

15

where the transcript does not fully disclose what transpired in the trial court, the burden is on the complaining party to have the record completed pursuant to OCGA § 5-6-41. In particular, when a portion of the transcript is lost or destroyed, OCGA § 5-6-41(f) and (g)[3] allow the

---

[3] OCGA § 5-6-41 (f) says:

Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth. If anything material to either party is omitted from the record on appeal or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court. The trial court or the appellate court may at any time order the clerk of the trial court to send up any original papers or exhibits in the case, to be returned after final disposition of the appeal.

OCGA § 5-6-41 (g) says:

Where a trial is not reported as referred to in subsections (b) and (c) of this Code section or where for any other reason the transcript of the proceedings is not obtainable and a transcript of evidence and proceedings is prepared from recollection, the agreement of the parties

parties to recreate the transcript from memory and allow the trial court to do so when the parties cannot agree. When this is not done, there is nothing for the appellate court to review.

(Citations and punctuation omitted.) *Glass v. State*, 289 Ga. 542, 545 (2) (712 SE2d 851) (2011); see also *Shelton v. State*, 350 Ga. App. 774, 780-781 (2) (830 SE2d 335) (2019). In other words, "[o]nce the State has satisfied its obligation under OCGA §§ 17-8-5 (a) and 5-6-41 (a) by providing a verbatim transcript, if the defendant believes the transcript omits or misrepresents a necessary part of the proceeding, he has the responsibility to seek to correct the transcript in that respect." *Johnson*, 302 Ga. at 193 (3) (a) n.7.[4]

---

thereto or their counsel, entered thereon, shall entitle such transcript to be filed as a part of the record in the same manner and with the same binding effect as a transcript filed by the court reporter as referred to in subsection (e) of this Code section. In case of the inability of the parties to agree as to the correctness of such transcript, the decision of the trial judge thereon shall be final and not subject to review; and, if the trial judge is unable to recall what transpired, the judge shall enter an order stating that fact.

[4] Court of Appeals Rule 18 (b) provides:

When the notice of appeal directs that transcripts of a trial or a hearing be included in the record, copies of all video or audio recordings that

(a) Here, Spears has made no effort to have the record supplemented, but has simply tried to benefit from the claimed deficiencies in it. "The law does not permit [Spears], who as the complaining party has the burden of having the record completed under OCGA § 5-6-41 (f), (g), simply to refuse to participate in the statutory

were introduced into evidence shall be transmitted to this Court along with the trial or hearing transcript. It shall be the responsibility of the party tendering the recordings at a trial or a hearing to ensure that a copy of the recording is included in the trial court record; however, it is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal, including the transmission of video or audio recordings. If a transcript of a trial or a hearing is designated as part of the appellate record, the clerk of the trial court shall then include the copy of the recording in the appellate record transmitted to this Court. If a copy of a recording played at a trial or a hearing is not included with the transcript designated to be transmitted in the appellate record, this Court may take whatever action is necessary in order to ensure completion of the record, including, but not limited to, issuing a show-cause order requiring an explanation of its absence. The appellant's failure to complete the record may also result in this Court declining to consider enumerations of error related to the missing evidence.

In addition, Court of Appeals Rule 41 (c) establishes a procedure by which an appellant may file in this Court a motion to supplement the record.

18

procedure and then claim error." (Citation and punctuation omitted.) *Glass*, 289 Ga. at 546 (3); see also *Shelton*, 350 Ga. App. at 780 (2) ("[A]lthough [appellant] blames the absence of the CD from the appellate record on the trial court and the State, the State met its burden by admitting the relevant exhibit into evidence, and on appeal it is the *appellant* who bears the burden of compiling a complete record.") (emphasis in original). Accordingly, this enumeration of error presents nothing for us to review. See *Glass*, 289 Ga. at 545 (2); cf. *Sheard v. State*, 300 Ga. 117, 119-120 (2) (793 SE2d 386) (2016) ("a number of extenuating circumstances" warranted a retrial, including the fact that the parties had tried but failed to complete the record over nearly two decades).

(b) This enumeration of error also fails for the following independent reasons. "[W]here, as here, an otherwise verbatim transcript is missing only one or a few parts of the trial, the appellant is not entitled to a new trial unless he alleges that he has been harmed by some specified error involving the omitted part and shows that the omission prevents proper appellate review of that error." *Gadson*, 303 Ga. at 878 (3) (a). Spears claims in a separate enumeration of error that the trial court plainly erred in admitting Husband's two police interviews because those interviews contained statements that incriminated Spears. However, the record in Case No. A22A1192

19

contains the unredacted or complete version of Husband's first interview, admitted as State's Exhibit 201, and the only part of this exhibit that potentially incriminates Spears is Husband's statement that he was not involved in the armed robbery but was present at the scene with a man named "Chris." And at trial, the detective who interviewed Husband testified that he made this statement. Because the issue of whether the trial court plainly erred in admitting Husband's first interview "can be resolved by looking to the remaining portions of the transcript," any omission of Exhibit 201A, the redacted first interview, has not harmed Spears. See *Zachary v. State*, 245 Ga. 2, 4 (262 SE2d 779) (1980); see also *Brockman v. State*, 292 Ga. 707, 716 (5) (b) (739 SE2d 332) (2013).

Similarly, while Spears claims in a separate enumeration of error that the trial court plainly erred in admitting State's Exhibit 207, the certified transcript of Banks' plea hearing, the relevant parts of this transcript were read into the trial transcript by the State. Therefore, the issue of whether the trial court plainly erred in admitting Exhibit 207 can be resolved by looking to the remaining portions of the trial transcript, and any omission of the exhibit has not harmed Spears. See *Zachary*, 245 Ga. at 4; see also *Brockman*, 292 Ga. at 716 (5) (b).

20

5. *Ineffective assistance.* Spears, Husband, Banks, and Denham were charged in a single indictment, but Banks and Denham eventually pleaded guilty. Before trial, Spears moved through his attorney to sever his trial from that of his co-defendants. Spears was appointed a new attorney before trial. The trial court never ruled on the motion to sever, and Spears and Husband were tried jointly.

On appeal, Spears argues that his trial counsel rendered ineffective assistance by failing to renew the motion to sever. We disagree, because counsel made a reasonable strategic decision to not renew the motion.

> In order for [Spears] to prevail on his claim that his trial counsel was ineffective, he has to demonstrate under the standard of *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that his trial counsel's performance was deficient, and that but for counsel's deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. In order to show a deficiency, [Spears] must overcome the strong presumption that his trial counsel's performance was within the broad range of reasonable professional conduct, the reasonableness being judged from counsel's perspective at the time of trial and under the particular circumstances of the case.

(Citation omitted.) *Roberts v. State*, 296 Ga. 719, 723-724 (2) (770 SE2d 589) (2015). "[I]n reviewing a trial court's decision on the alleged ineffectiveness of counsel, this Court is to accept the trial court's factual findings and credibility determinations

21

unless they are clearly erroneous, but to independently apply the legal principles to the facts." Id. at 724 (2).

Spears cannot establish that trial counsel performed deficiently, because counsel made a reasonable strategic decision to not sever his trial from Husband's. At a hearing on Spears' motion for new trial, counsel testified that he did not renew the motion to sever because Husband was "certainly directly involved" with the armed robbery and counsel thought the jury would look more favorably upon Spears if he was tried with a co-defendant who was more culpable than him. "[A] tactical or strategic decision made by counsel cannot form the basis for ineffective assistance of counsel unless it was so patently unreasonable that no competent attorney would have chosen it." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 183 (2) (766 SE2d 45) (2014); see also *Jackson v. State*, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007) ("The failure to file a motion to sever does not require a finding of ineffective assistance where the decision whether to seek severance is a matter of trial tactics or strategy, and a decision amounting to reasonable trial strategy does not constitute deficient performance.") (citation and punctuation omitted). Here, trial counsel's strategic decision to proceed to trial with a more culpable co-defendant was not patently unreasonable. See *Jackson*, 281 Ga. at 707-708 (6) (trial counsel did not

22

render ineffective assistance in failing to move to sever defendant's trial from that of her co-defendant, where counsel deliberately chose not to seek severance because strategy was to enable the jury to focus their outrage on the co-defendant). Indeed, the fact that the jury ultimately acquitted Spears of four counts and deadlocked on three counts that were later nolle prossed indicates that this decision was reasonable. See *Sledge v. State*, 312 Ga. App. 97, 102 (2) (a) (717 SE2d 682) (2011).

6. *Admission of Husband's recorded statements.* Spears argues that the trial court plainly erred in admitting Husband's two police interviews and allowing the detective to testify about Husband's statements therein, because the statements incriminated Spears, Husband did not testify, and Spears had no opportunity to cross-examine Husband, in violation of Spears' Confrontation Clause rights under *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). We disagree.

"In order to preserve an objection for ordinary appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered." (Citation and punctuation omitted.) *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019). Because Spears did not specify the basis of his objection to this evidence when it was offered, we review its admission for plain error only. See OCGA § 24-1-103 (d); *Vaughn v. State*, 352 Ga. App. 32, 34-35 (1) (833 SE2d 723) (2019). "To

23

establish plain error, [Spears] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted.) *Denson v. State*, 307 Ga. 545, 547-548 (2) (837 SE2d 261) (2019). "The failure to meet one element of this test dooms a plain error claim." Id. at 548 (2).

The trial court did not plainly err in admitting the evidence of Husband's police interviews because it is not clear that the evidence violated Spears' Confrontation Clause rights. "*Bruton* excludes only the statement of a nontestifying co-defendant that standing alone directly inculpates the defendant. By contrast, *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial." (Citations and punctuation omitted.) *Simpkins v. State*, 303 Ga. 752, 755-756 (II) (814 SE2d 289) (2018). Again, the evidence regarding Husband's first interview showed that Husband stated that he was not involved in the armed robbery but was present at the scene with a man named "Chris." The evidence regarding the second interview

24

showed that Husband stated that he and another person robbed Hudson, and implied that this person was not Banks or Denham because Husband identified them by name.

Upon introducing the interviews, the State did not directly attempt to establish that Spears was the "Chris" in the first interview or the unknown perpetrator in the second interview. Because it was not clear that Husband implicated Spears, the trial court did not plainly err in admitting evidence of the interviews. See *Simpkins*, 303 Ga. at 756 (II) ("Unlike in other cases where we have found *Bruton* violations, here the State did not clearly link the defendant with the omitted name contemporaneously with the introduction of the statements or immediately afterward."); cf. *Butler v. State*, 270 Ga. 441, 446 (3) (511 SE2d 180) (1999) ("[E]ven if the statement of a non-testifying co-defendant has been redacted to replace the name of the defendant with a word or symbol, it nevertheless violates a defendant's right of confrontation to admit that statement into evidence when it *obviously* refers to the defendant and implicates him.") (emphasis supplied).

7. *Admission of Banks' testimony from plea hearing.* A transcript of Banks' plea hearing was admitted at trial without objection, and the State read from the transcript to the jury, including Banks' testimony that Spears participated in the armed robbery. On appeal, Spears argues that the trial court plainly erred in admitting

25

the transcript and allowing the State to read from it for three reasons. First, the State incorrectly represented that the transcript was of Banks' police interview. Second, because the State discussed Banks' plea hearing testimony before the transcript was introduced, this discussion violated the best evidence rule. Third, the evidence of Banks' plea hearing testimony was inadmissible hearsay, because the State did not confront Banks about what he said at the hearing and therefore could not introduce extrinsic evidence of his prior inconsistent statements.

Addressing Spears' arguments in turn, we conclude that the trial court did not plainly err in admitting the transcript and allowing the State to read from it. First, although the State initially represented that the transcript was of Banks' police interview, there is no indication that this interview transcript was admitted into evidence, the State later represented that the transcript was of Banks' plea hearing, and Spears was given an opportunity to object to the admission of the transcript. Second, because the State did not read from the transcript until it was admitted, there was no violation of the best evidence rule. See *Hafeez v. State*, 339 Ga. App. 467, 469 (2) (793 SE2d 632) (2016) ("Here, the state admitted the video tape itself, so the admission of photographs extracted from that tape presents no best evidence concerns.").

Third, Banks' plea hearing testimony was not clearly hearsay, because such testimony apparently constituted a prior inconsistent statement. A witness' failure to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made and admitting the statement as a prior inconsistent statement. See *Rozier v. State*, 365 Ga. App. 178, 180-181 (2) (877 SE2d 855) (2022); OCGA §§ 24-6-613 (b),[5] 24-8-801 (d) (1) (A).[6] During the State's examination of Banks at trial, Banks claimed to be unable to recall his plea hearing testimony implicating Spears in the armed robbery. Thus, it appears that Banks' plea hearing testimony implicating Spears was admissible as a prior inconsistent statement. See *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018) ("Given [the witness'] inconsistent testimony at trial and her convenient memory lapses about the portions of her conversation with the police that implicated

---

[5] This statute provides in pertinent part that "extrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require."

[6] This statute provides that "[a]n out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under Code Section 24-6-613 or is otherwise admissible under this chapter."

Appellant, her earlier statements were not hearsay but rather were properly admitted as prior inconsistent statements.").

8. *Admission of Spears' prior robberies.* The trial court ruled over Spears' pre-trial objection that the State could introduce evidence that he committed two prior robberies in order to prove his motive and intent in this case. However, Spears renewed his objection to this evidence when it was offered at trial, and the trial court ruled that the evidence was improper character evidence. The trial court instructed the jury to disregard the evidence and asked the jurors to indicate if they could not follow its instruction, but no juror so indicated.

On appeal, Spears argues that the trial court erred in admitting the evidence of his prior offenses. However, because the trial court struck the evidence and provided curative instructions and Spears did not object to such instructions or move for a mistrial, this argument fails.

"[Q]ualified jurors are presumed to follow the instructions of the trial court," *Womac v. State*, 302 Ga. 681, 683 (2) (808 SE2d 709) (2017) (citation and punctuation omitted), and "curative instructions are a proper remedy when a witness improperly places a defendant's character into evidence." *Gardner v. State*, 273 Ga. 809, 813 (5) (546 SE2d 490) (2001). Furthermore, when curative instructions are

28

given due to the introduction of improper character evidence, a defendant must object to the instructions and move for a mistrial in order to preserve a claim that he was harmed by the evidence. For instance, in *Moore v. State*, 294 Ga. 450, 451 (2) (754 SE2d 333) (2014), the Supreme Court of Georgia rejected the defendant's argument that the trial court erred in denying a mistrial after three jurors saw unredacted references to his prior offense:

> [E]ven if Moore had made a timely motion for a mistrial, he did not object to the trial court's curative instructions, which were given to each of the three affected jurors after the unredacted portion of the transcript was brought to the court's attention by defense counsel. For this additional reason, the issue that Moore now attempts to raise on appeal is waived.

See also *Grant v. State*, 278 Ga. 536, 537 (2) (604 SE2d 515) (2004) (where trial court denied defendant's motion for mistrial after presentation of improper character evidence and gave curative instructions, but defendant did not object to curative instructions or renew his motion for mistrial, defendant could not claim that he had been denied a fair trial); *Henderson v. State*, 184 Ga. App. 834, 835 (1) (363 SE2d 52) (1987) ("When . . . an objection is made to certain testimony and the judge gives curative instructions, the judge is not required to grant a mistrial on his own motion

where defense counsel made no objection to the instruction given and failed to specify what further form of relief, if any, was desired. A party may not raise an objection for the first time on appeal.") (citation and punctuation omitted). Thus, Spears has waived this argument based on his failure to object to the trial court's curative instructions and to move for a mistrial following the introduction of his prior robberies.

*Judgment affirmed, sentence vacated, and case remanded for resentencing. Barnes, P. J., and Hodges, J., concur*.